403 P.2d 532

STATE of Arizona, Appellee,

v.

William Wayne LeVAR, Appellant.

No. 1359.

Supreme Court of Arizona.

En Banc.

June 23, 1965.

Rehearing Denied July 13, 1965.

**218**

Robert W. Pickrell, Atty. Gen., by Merton E. Marks, Asst. Atty. Gen., and Charles N. Ronan, County Atty., for appellee.

Lewis, Roca, Scoville, Beauchamp & Linton, by John J. Flynn, and Monroe G. McKay, Phoenix, for appellant.

———◆———

BERNSTEIN, Justice.

Appellant, William Wayne LeVar, was charged in Maricopa County Superior Court with first degree murder. A jury found appellant guilty of second degree murder. He was sentenced to serve a term of not less than 10 years nor more than 15 years, and he has appealed his conviction.

On September 4, 1962, after learning that his sister had become pregnant through a romantic involvement with the deceased, appellant called his employer to say that he would not be at work that day, purchased a gun and ammunition, went to the deceased's office and shot the latter to death. Appellant does not dispute that he fired the fatal shots. He concedes that there is evidence in the record which could support the verdict of the jury.

Appellant defended upon the plea of not guilty by reason of insanity. The State introduced the testimony of two psychiatrists, whose professional qualifications were not disputed. Dr. William B. McGrath testified that the appellant was neither psychotic nor mentally diseased and that he knew what he was doing and knew right from wrong on the date of the homicide. Dr. Samuel Wick testified to the same effect.

The facts upon which the defense theory of the case rests were brought out upon the examination and cross examination of the State's psychiatrists.

Appellant, a young man of twenty-five, had a long history of emotional instability and mental disturbance. As early as 1956 he was discharged from the army for emotional instability. He had slashed his wrists in an attempt at suicide. An example of his failures under stress was his total breakdown at the beginning of the trial and his inability to assist counsel at that time. All psychiatrists who examined him agreed that this condition was not faked or feigned.

The defense contended the evidence showed that despite his emotional immaturity and inability to face life's responsibilities, he was forced to become the head of the household and responsible for the family upon the death of his father in 1956. He reluctantly assumed that responsibility and proved to be adequate in his job. His sister became involved with the decedent and was made pregnant by him. Appellant was told that decedent had refused to help his sister, and had abandoned her, and that she had gone to Oklahoma to have her illegitimate child in a home for unwed moth-

ers. Unable to cope with the situation, the appellant responded by despondency and uncontrolled crying.

The defense further contended the evidence showed that appellant realized that he had to do something as head of the family about confronting the decedent to compel him to accept his responsibility for what he had done. Because of his immaturity he was unable to face the decedent even to talk to him. He therefore purchased a gun to give himself sufficient courage to face the decedent and to protect himself in the event the decedent should respond with violence to this confrontation. Although he knew, as head of the family, that he had to confront the decedent he was afraid to do so but forced himself, with the gun in a paper sack under his arm, to enter the office where the decedent worked. From the time he entered the place of the decedent's employment, the defense contended, he was detached from his surroundings and unaware of what was going on around him. The defense theory was that appellant was not aware of what happened until he was jarred into conscious awareness of his circumstances by the sound of the shots that he fired. The evidence, as interpreted by the defense, showed that from the time of appellant's entry into the place of business of the decedent until after the shots were fired, appellant was not aware of what was happening and the acts of the decedent in extending his hand and making gestures which appellant interpreted as insulting combined with the entire history of the appellant's emotional instability caused, what Dr. McGrath described as an "explosion". The provoking incident may have had little to do with the "explosion" but was simply the last incident in a whole series of events which appellant was not able to face. Within seconds of the shooting, witnesses described appellant as totally detached from his surroundings and he remained more or less that way for several days after the shooting.

Dr. McGrath's conclusions, brought out on redirect examination by the State, were:

" * * * he has certain traits of immaturity, both in his physical appearance, in his general demeanor and in his way of dealing with everyday affairs, responsibilities, roles, activities, function of the adult. He shows certain traits, as I say, of immaturity, which in my opinion are an arrest and coiling up of what instincts and developmental traits the ordinary person goes ahead and develops."

On the basis of this testimony the defense requested an instruction on "partial insanity" almost identical with that requested in State v. Schantz, 98 Ariz. 200, 403 P.2d 521. The instruction was refused. Under Schantz, appellant's first assignment of error, based on this refusal, is without merit.

The trial got off to a bad start. The jury had just been impaneled when the State moved to endorse another witness on the information. That witness was the husband of one of the members of the jury. This necessitated the removal of that juror. Appellant further contends the prosecuting attorney overstepped the bounds of proper conduct when he made his opening statement, in that he indulged in argument about the weight of the evidence, the quality of the evidence and its effect on any possible defenses.

The trial barely underway, appellant fell into such a state of depression with uncontrollable sobbing that he was unable to assist counsel. The condition of the appellant resulted in an examination pursuant to Rule 250, Rules of Criminal Procedure, 17 A.R.S. The breakdown occurred on February 27, 1963. The jury was dismissed to return to their homes until March 6, 1963. During the period when the jury was dismissed the newspapers carried one article reporting the request of counsel for appellant for a lock-up of the jury. Rule 268, Rules of Criminal Procedure, requires that a request for lock-up of the jury be kept secret. At each stage counsel for the appellant made appropriate motions.

As a result of psychiatric examination and treatment during the period of Rule 250 commitment, it became apparent that appellant did not seem to be aware that his attorney had pleaded him not guilty by reason of insanity. In view of the appellant's inability to communicate with his counsel prior to trial and the discovery of additional facts relating to the defense of insanity during the hearing, pursuant to Rule 250, counsel avowed to the court that he was taken by surprise by these facts and that he was unprepared to proceed with defense of the case due to lack of communication with his client. The court denied counsel's motion.

Assignment of Error No. 2 is that the court erred in denying appellant's motion for mistrial based on adverse extraneous influences of the jury including the necessity to dismiss one juror and extended periods of recess during which the newspapers carried articles highly prejudicial to appellant's position and in refusing to grant a new trial because of such error.

Assignment of Error No. 3 is that the court erred in refusing appellant's motion for mistrial based on the fact that appellant, due to his mental condition, was unable to communicate with counsel in time to permit counsel sufficiently to prepare for trial.

The matters raised by these assignments of error and appellant's motions for a mistrial all relate to matters within the sound discretion of the trial court.

We have held that while the constitutional right to counsel includes the right of counsel to adequate time to prepare the case, the granting of a motion for con-

tinuance for this purpose is a matter to be decided by the trial judge in the exercise of sound judicial discretion and in the light of the particular facts of the case. Sam v. State, 33 Ariz. 383, 265 P. 609, 617. Our observation in Sam that "the cases were conducted throughout with the highest degree of professional skill, and we are satisfied that no counsel with unlimited time for preparation could have legitimately done more for defendants" is applicable to this case.

The other matters raised by the second assignment are subject to the same principle. As the Maryland Court of Appeals said in Fountain v. State, 135 Md. 77, 107 A. 554, 556, 5 A.L.R. 908, 913:

"According to the general rule, the suspension or postponement of a trial is recognized as being within the discretion of the trial court, and its ruling on a question of that nature will not be disturbed on appeal unless such action is plainly required in the interests of justice. In 16 Corpus Juris, p. 484, a discussion of the law relating to applications for continuances in criminal cases, on the ground of public excitement and prejudice, includes the following statement: 'In any event such excitement must be such that its natural tendency would be to intimidate or swerve the jury; and as the court in which the case is pending can much better determine the propriety of a postponement on this ground than can the appellate court, it requires a very strong showing to induce the upper court to interfere.' "

Under all the circumstances of this case we hold that the trial judge did not abuse his discretion in any of the rulings involved in these assignments of error.

Affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concur.