2 P.3d 89

**STATE of Arizona, Appellee,**

v.

**Howard James CLARK, Appellant.**

**No. 1 CA–CR 97–0673.**

Court of Appeals of Arizona,
Division 1, Department E.

Jan. 19, 1999.

Review Denied May 23, 2000.

Janet A. Napolitano, Arizona Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Colleen L. French, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, Attorney for Appellant.

Howard James Clark, Florence, In Propria Persona.

## OPINION

RYAN, Judge.

¶ 1 Howard James Clark appeals from his convictions and sentences for one count of attempted first degree murder, a class two, nonrepetitive, dangerous felony, and one count of aggravated assault, a class three, nonrepetitive, dangerous felony. Counsel for Clark has filed a brief in compliance with *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969), stating that he has searched the record and found no arguable question of law upon which an appeal can be based. Clark filed a supplemental brief *in propria persona* ("*pro per*").

¶ 2 Recently, the Ninth Circuit Court of Appeals held that compliance with *Anders* requires counsel to set forth an arguable issue or issues in the brief. *Robbins v. Smith,* 152 F.3d 1062 (9th Cir.1998), *amending* 125 F.3d 831 (9th Cir.1997). Under *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), we ordered the parties to file supplemental briefs addressing whether this court's procedure,[1] which does not require appointed counsel to allege arguable issues if counsel determines none exist, complies with *Anders* in light of the *Robbins*

---

1. *See State v. Scott,* 187 Ariz. 474, 478 n. 4, 930 P.2d 551, 555 n. 4 (App.1996) ("When filing an *Anders* brief in Maricopa County, rather than articulate 'arguable issues,' counsel typically present a detailed statement of facts and procedure with appropriate references to the trial record. These statements serve the same purposes as identifying arguable issues by demonstrating that counsel has thoroughly reviewed the record, and by aiding this court in our own review.").

decision. Counsel responded and we publish this decision to guide appointed counsel in the preparation of an indigent appellant's brief after counsel has determined there are no arguable issues to the appeal.

## I.

¶ 3 Clark, almost sixty and legally blind, lived alone in a trailer and conducted a mechanic's business. As a result of his blindness, numerous friends stopped by from time to time to assist Clark with his daily tasks. One of these friends introduced Clark to M.L.[2] M.L. offered to stay with Clark to help him with his problems and his business. Clark accepted.

¶ 4 After M.L. had roomed with Clark for several weeks he invited a friend, E.S., to visit him. On the night of November 18, 1996, M.L., E.S., and several others had a party in Clark's trailer. Clark was visiting a friend that night and did not return home until the early morning hours of the next day.

¶ 5 That next day, two of his neighbors, Nellie Saliva and Michelle Parker, found E.S. behind the bar in Clark's trailer. Nellie and Michelle knew that Clark allowed no one behind the bar because he kept his personal things there. Suspicious, the pair followed E.S. into Clark's bedroom. There they saw that E.S. had packed several of Clark's things into her duffel bag and seemed to be preparing to leave. Michelle told Clark, who confronted E.S.

¶ 6 E.S. insisted she was not attempting to steal anything. Clark became angry and threw a tape case at her, striking her. Upset, E.S. ran from the trailer. Outside, M.L. was working on one of the vehicles that Clark had accepted for repair. E.S. ran past M.L., who followed her to determine what was wrong.

¶ 7 Clark then stepped out onto the porch of his trailer with a pistol. He yelled to M.L. to bring E.S. back so. he could shoot her. Clark pointed the pistol in their direction. M.L. told Clark that he could not shoot because M.L. was in the way. Clark responded, "Fine, I'll shoot you." Clark fired and

the bullet ricocheted off a nearby vehicle and struck M.L. in the back.

¶ 8 E.S. ran to a convenience market across from Clark's trailer and called 911. Eventually, M.L. also made it to the convenience market. The paramedics arrived and M.L. was taken to the hospital. He was treated and released the following morning.

¶ 9 In the meantime, Maricopa County deputy sheriffs had arrived and contacted Clark. Clark, now alone in his trailer, denied shooting M.L. but refused to come out and talk with police. Clark told the police that he had a flamethrower and explosives in the trailer and that he had a hostage. The deputies did not know if Clark was telling the truth, and a two-and-a-half hour stand-off ensued. Finally, Deputy David Head arrived and talked Clark into surrendering. The deputies never recovered the weapon used to shoot M.L..

¶ 10 Clark was indicted on one count of attempted first degree murder, one count of attempted second degree murder (later withdrawn), and one count of aggravated assault. At trial, M.L. and E.S. testified that Clark had pointed a pistol at them and fired, hitting M.L.. Both witnesses were certain that Clark was the one that shot M.L.. In addition, the State presented evidence that Clark made phone calls from jail to ask a friend to make E.S. "disappear" before she could testify. There was also evidence that Clark offered to send M.L. to California at the time of trial to prevent him from testifying.

¶ 11 Clark defended on the basis that a "Mexican man" had actually shot M.L. Clark claimed that the man was a friend of M.L.'s who became upset when the drug deal they were transacting turned sour. Previously, on cross-examination, Clark's counsel had brought out that M.L. had seven baggies of methamphetamine when he was shot.

¶ 12 The jury convicted Clark of the two charges. The trial court sentenced Clark to concurrent, presumptive terms of 10.5 years on the attempted murder charge and 7.5 years on the aggravated assault charge. Clark appeals. We have jurisdiction under

---

**2.** We use initials to protect the privacy of the victims.

article 6, section 9 of the Arizona Constitution and Arizona Revised Statutes Annotated ("A.R.S.") sections 12–120.21, 13–4031, and 13–4033.

## II.

¶ 13 We first discuss the question whether this court's procedure for dealing with *Anders* appeals is constitutional in light of the *Robbins* decision. In *Robbins,* appointed counsel, following the procedure approved by the California Supreme Court in *People v. Wende,* 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071 (1979), filed a brief in the California Court of Appeal "which briefly outlined the facts surrounding Robbins's trial and failed to present any possible grounds for appeal." 152 F.3d at 1064. Counsel also asked the court to review the record for arguable issues and promised to remain available to address any issues found by the court. *Id.* The *Robbins* court held that this procedure failed to comply with *Anders* because counsel "completely failed to identify any grounds that arguably supported an appeal." *Id.* at 1067. It thus affirmed the federal district court's grant of habeas corpus relief. *Id.* at 1069.

¶ 14 We think our court's procedure, much like the procedure used in other jurisdictions, better appreciates appointed counsel's ethical obligations while still providing indigent appellants their constitutional rights to counsel, due process, and equal protection. We disagree with the *Robbins* decision and accordingly decline to follow it. *See State v. Vickers,* 159 Ariz. 532, 543 n. 2, 768 P.2d 1177, 1188 n. 2 (1989) (declining to follow a Ninth Circuit opinion holding Arizona's death penalty statute unconstitutional because that opinion rested on "grounds on which different courts may reasonably hold different views of what the Constitution requires").

## A.

¶ 15 In *Anders,* the United States Supreme Court first attempted to determine the extent of appointed appellate counsel's duty to "prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." 386 U.S. at 739, 87 S.Ct. 1396. There, the defendant's court-appointed lawyer, following California's established procedures, wrote a letter advising the appellate court that he had concluded his client's appeal had no merit. *Id.* Simultaneously, he advised that court that the defendant wished to file a brief on his own behalf. After reviewing the defendant's brief and the record, the California appellate court affirmed the conviction. *Id.* Subsequently, the defendant filed a habeas corpus petition with the California Supreme Court. The California Supreme Court also affirmed defendant's conviction. *Id.* at 740–41, 87 S.Ct. 1396. The United States Supreme Court reversed, holding:

> On a petition for a writ of habeas corpus some six years later [the court] found the appeal had no merit. It failed, however, to say whether it was frivolous or not, but, after consideration, simply found the petition to be "without merit." The [California] Supreme Court, in dismissing this habeas corpus application, gave no reason at all for its decision and so we do not know the basis for its action. We cannot say that there was a finding of frivolity by either of the California courts or that counsel acted in any greater capacity than merely as *amicus curiae....* Hence California's procedure did not furnish petitioner ·with counsel acting in the role of an advocate nor did it provide that full consideration and resolution of the matter as is obtained when counsel is acting in that capacity.

*Id.* at 743, 87 S.Ct. 1396. The Court concluded that such an approach "does not comport with fair procedure and lacks that equality that is required by the Fourteenth Amendment." *Id.* at 741, 87 S.Ct. 1396.

¶ 16 The Court then reviewed the line of cases dealing with an indigent defendant's appellate rights. *See, e.g., Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (necessity of providing a transcript for indigent defendants on appeal); *Douglas v. California,* 372 U.S. 353, 357–58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (appointment of counsel on appeal). Relying on the equal protection rationale of these decisions, the

Court described what is required of appointed appellate counsel when counsel determines no serious basis for the indigent's appeal exists:

> The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.* The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

> This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a non-indigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate. Moreover, such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled. This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel.

*Anders,* 386 U.S. at 744–45, 87 S.Ct. 1396 (footnote omitted).

¶ 17 Although *Anders* implicated a defendant's rights to due process and counsel, the central principle that *Anders* sought to vindicate was equal protection. Thus, an indigent criminal defendant and a non-indigent defendant must be afforded the same basic means of presenting an appeal. Those means necessarily included an attorney to advocate on the defendant's behalf.

¶ 18 The Court reaffirmed *Anders'* equal protection rationale in *McCoy v. Wisconsin,* 486 U.S. 429, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988). In *McCoy,* appointed counsel challenged a Wisconsin Supreme Court rule that required counsel seeking to withdraw to submit a brief to the court that included an explanation as to why issues that " 'might arguably support the appeal' " lacked merit. *Id.* at 430, 108 S.Ct. 1895 (citation omitted). In deciding the issue the Court stated:

> The principle of substantial equality ... require[s] that appointed counsel make the same diligent and thorough evaluation of the case as a retained lawyer before concluding that an appeal is frivolous. Every advocate has essentially the same professional responsibility whether he or she accepted a retainer from a paying client or an appointment from a court. The appellate lawyer must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal. In preparing and evaluating the case, and in advising the client as to the prospects for success, counsel must consistently serve

the client's interest to the best of his or her ability. Only after such an evaluation has led counsel to the conclusion that the appeal is "wholly frivolous" is counsel justified in making a motion to withdraw.

*Id.* at 438–39, 108 S.Ct. 1895 (footnote omitted).

¶ 19 The Court additionally noted that the *"Anders* brief is designed to assure the court that the indigent defendant's constitutional rights have not been violated." *Id.* at 442, 108 S.Ct. 1895. The Court continued:

To satisfy federal constitutional concerns, an appellate court faces two interrelated tasks as it rules on counsel's motion to withdraw. First, it must satisfy itself that the attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal. Second, it must determine whether counsel has correctly concluded that the appeal is frivolous.

*Id.* This language implicated the indigent's Sixth Amendment right to counsel. The Court sought to make certain that an indigent appellant's right to equal protection had substance; thus, it required appellate courts to use the *Anders* procedure to ensure that appointed counsel effectively performed requisite legal duties. Because the Wisconsin rule facilitated the appellate court's determination on counsel's adequacy and did not violate the defendant's constitutional rights, the Court upheld the rule.

¶ 20 The Court reiterated an indigent defendant's right to effective counsel on appeal in *Penson,* 488 U.S. at 75, 109 S.Ct. 346. In *Penson,* after the indigent petitioner and two co-defendants were found guilty of crimes in an Ohio state court, appellate counsel filed a document captioned "Certification of Meritless Appeal and Motion in the Ohio Court of Appeals." *Id.* at 77, 109 S.Ct. 346. The certificate indicated that counsel had carefully reviewed the record and found no errors requiring reversal. He also requested leave to withdraw. *Id.* at 78, 109 S.Ct. 346.

¶ 21 The Ohio appellate court granted the motion to withdraw and specified that the court would independently review the record to determine whether any reversible error existed. *Id.* After examining the record, the Ohio appellate court found that counsel's certification of meritlessness was " 'highly questionable' " and that " 'several arguable claims' " existed. *Id.* at 79, 109 S.Ct. 346 (citations omitted). In fact, it reversed one of petitioner's convictions for plain error. However, the court concluded that petitioner suffered no prejudice as a result of counsel's performance because the court had thoroughly examined the record. The court affirmed petitioner's remaining convictions and the Ohio Supreme Court dismissed the appeal. *Id.*

¶ 22 On review, the United States Supreme Court held that the petitioner was deprived of equal protection and the right to counsel because the procedures used in Penson's case failed to comply with the constitutional requirements set forth in *Anders.* First, appointed counsel's motion did not identify anything in the record that might arguably support the appeal. *Id.* at 81, 109 S.Ct. 346. Second, the Ohio appellate court ruled on the motion to withdraw before making its own examination of the case to determine if counsel had correctly determined the appeal was frivolous. *Id.* at 82–83, 109 S.Ct. 346. These errors prevented the *Anders* brief from achieving its purpose. The Court again explained that the two functions of the *Anders* brief were to provide an appellate court with a basis for determining whether appointed counsel had performed his duty to support his client's appeal to the best of his ability, and to help the appellate court make its own determination that the appeal was indeed frivolous. *Id.* at 81–82, 109 S.Ct. 346.

¶ 23 The Court also stated that the Ohio court erred by failing to appoint new counsel after it had determined that several arguable claims capable of supporting the appeal existed. *Id.* at 83, 109 S.Ct. 346. Because our system of justice is premised on adversarial presentation, a defendant's right to counsel can be vindicated only by an active advocate on his behalf. *Id.* at 84–85, 109 S.Ct. 346. The Court, therefore, concluded that an appellate court's review would not suffice to protect the indigent's constitutional rights when its review uncovered an "arguable" issue. *Id.* at 86–87, 109 S.Ct. 346.

¶ 24 Taken together, *Anders, McCoy,* and *Penson* set forth the constitutional minimums to ensure indigent defendants their rights to counsel, equal protection, and due process when counsel determines that no meritorious issues exist to appeal. The *Anders* line of decisions outlines a procedure that must be followed to ensure compliance with these minimum constitutional standards. Under this procedure, appointed counsel will not be permitted to withdraw unless counsel first files a brief that indicates to the appellate court that counsel has diligently attempted to find an arguable issue for the defendant. The appellate court then reviews the record to ensure counsel's diligence. If the court finds an arguable issue, it must direct counsel to assist the defendant in presenting this argument. Only if it finds no arguable issue may the court permit the indigent's appointed counsel to withdraw.

### B.

¶ 25 Unfortunately, *Anders'* guarantee of equal and effective counsel has created a fundamental conflict between compliance with the Constitution's requirements and appointed counsel's ethical obligations. Simply stated, if counsel has concluded that the appeal is "wholly frivolous," counsel has also necessarily concluded that nothing in the record exists that might "arguably support" the appeal. If counsel must file a brief after determining that the appeal has no merit, that brief may ultimately be a brief against the client.[3] By filing a "no-merit" brief, counsel is put in the uncomfortable, possibly unethical position of arguing against the client's interests.

¶ 26 The issue then becomes what exactly counsel must do to satisfy the constitutional requirements of *Anders* without running afoul of ethical obligations to the court and the defendant. Different jurisdictions have developed various approaches to resolve this problem. *See generally,* Martha C. Warner, *Anders in the Fifty States: Some Appellants' Equal Protection is More Equal Than Others',* 23 FLA. ST. U.L.REV. 625, 669–87 (1996).

¶ 27 Several of the federal circuits require literal compliance, that is, a brief with pertinent cites to legal authority raising any "arguable" issues—notwithstanding counsel's ethical obligations. *See, e.g., Robbins,* 152 F.3d at 1067; *United States v. Pippen,* 115 F.3d 422, 426 (7th Cir.1997) (the brief must identify, with record references and legal citations, possible grounds for error along with an argument for reversal and the reason why such an argument would be frivolous);[4] *United States v. Zuluaga,* 981 F.2d 74, 75 (2d Cir.1992) (brief must include references to the record and citations to legal authorities). Some states have adopted this logic as well and have rules explicitly detailing what is required in *Anders* briefs. *See* Warner, *supra,* at 653 nn. 223 & 224; (citing ARK. R.APP. P. 4–3(j); DEL. SUP.CT. R. 26(c); IOWA R.APP. P. 104; MICH. CT. R. 7.211(c)(5); R. OKLA. CT.CRIM.APP. 3.6(B)).[5]

¶ 28 Other states do not permit appointed counsel to withdraw from representing indigents on appeal, but require counsel to brief the case on the merits. *See, e.g., State v. McKenney,* 98 Idaho 551, 568 P.2d 1213, 1214–15 (Idaho 1977); *Commonwealth v. Moffett,* 383 Mass. 201, 418 N.E.2d 585, 590–91 (1981). However, in some of the states

---

**3.** This is precisely what lawyers are required to do in Wisconsin. *See McCoy,* 486 U.S. at 440–41, 108 S.Ct. 1895.

**4.** Significantly, the Seventh Circuit does not conduct a complete independent review of the record but confines itself to issues raised and argued in the brief. *United States v. Wagner,* 103 F.3d 551, 553 (7th Cir.1996). In *Wagner,* Judge Posner wrote that

[i]f in light of this scrutiny it is apparent that the lawyer's discussion of the issues that he chose to discuss is responsible and if there is nothing in the district court's decision to sug-

gest that there are other issues the brief should have discussed, we shall have enough basis for confidence in the lawyer's competence to forgo scrutiny of the rest of the record.
*Id.*

**5.** At least one commentator has noted that detailed briefing requirements frequently result in a "merits" brief being filed instead of an *Anders* brief. Filing a merits brief confines the appellate court's review to only those issues raised in the brief—in many cases reducing the appellate court's review of the record. *See* Warner, *supra,* at 653 n. 223, 654 n. 225; *see also Scott,* 187 Ariz. at 478, 930 P.2d at 555.

that do not permit counsel to withdraw, courts allow counsel to file a brief containing only the factual and procedural background of the case without raising frivolous issues. *See, e.g, Wende,* 158 Cal.Rptr. 839, 600 P.2d at 1075; *State v. Balfour,* 311 Or. 434, 814 P.2d 1069, 1079–80 (1991). Finally, a number of states have abandoned the *Anders* procedure altogether. *See* Warner, *supra,* at 651 (noting that *Anders* briefs are not filed in Alaska, Hawaii, Kansas, Maryland, New Jersey, and Nebraska).

¶ 29 This variety of approaches reveals an underlying tension in the *Anders* procedure. While the Supreme Court has the authority to determine constitutional issues, it is up to the states to determine the proper ethical rules for attorneys practicing within their jurisdiction. *See, e.g., Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) (recognizing that states have compelling interest in regulating the practice of law in their courts). Indeed, the continued survival of the various approaches suggests that the Supreme Court recognizes that there is more than one acceptable way to resolve the conflict between counsel's ethical obligations and an indigent defendant's right to effective appellate representation. Thus, as long as a jurisdiction affords indigent defendants their rights to counsel, equal protection, and due process, it may determine the proper ethical course for appointed appellate counsel who conclude that only frivolous issues exist on appeal. Within this authority, we believe this court's approach satisfactorily reconciles *Anders'* constitutional concerns with counsel's ethical obligations.

### C.

¶ 30 Under our procedure, when appointed counsel determines that a defendant's case discloses no arguable issues for appeal, counsel files an *Anders* brief. The brief contains a detailed factual and procedural history of the case, with citations to the record. *See Scott,* 187 Ariz. at 478 n. 4, 930

P.2d at 555 n. 4. Counsel submits the brief to the court and the defendant. The defendant is then given the opportunity to file a brief *pro per.* After receiving all briefing, the court reviews the entire record for reversible error. If any arguable issue presents itself, the court directs appointed counsel to brief the issue. Only after the court has ascertained that counsel has conscientiously performed his or her duty to review the record, and has itself reviewed the record for reversible error and found none, will the court allow counsel to withdraw. *See State v. Shattuck,* 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). We conclude that this procedure permits counsel to perform ethically, while simultaneously ensuring that an indigent defendant's constitutional rights to due process, equal protection, and effective assistance of counsel are protected.

¶ 31 We believe our procedure is appropriate for two reasons. First, the procedure does not run afoul of appointed counsel's ethical obligations. Under Arizona's ethical rules, a lawyer may not assert frivolous claims or defenses. *See* Ariz. R. Sup.Ct. 42 (professional conduct), Ethical Rule ("ER") 3.1 (meritorious claims and contentions); *see also* ER 3.3 (candor to the tribunal). Literal compliance with *Anders'* command to raise all arguable issues, notwithstanding their merit, would cause appellate counsel to violate his or her ethical obligations. *See* ER 1.16(a) ("[A] lawyer shall ... withdraw from the representation of a client if: (1) the representation will result in violation of the Rules of Professional Conduct...."). For this reason, we do not require the brief to contain non-meritorious arguments. Moreover, requiring the brief to contain non-meritorious arguments, together with citation to legal authority indicating why such arguments are frivolous,[6] would negatively affect appointed counsel's relationship with the defendant. The client might not believe that counsel behaved as a zealous advocate on behalf of the client if counsel's brief con-

---

6. Our ethical rules require an attorney to include citation to authority that proves the argument is frivolous. *See* ER 3.3(a)(3) ("A lawyer shall not knowingly ... fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel....").

tained reasons for the appellate court to affirm the client's conviction.[7]

¶ 32 Second, our procedure adequately protects the indigent defendant's rights to counsel, equal protection, and due process established by *Anders, McCoy*, and *Penson*. By requiring counsel to file an *Anders* brief setting forth a detailed factual and procedural history of the case with citations to the record, this court can satisfy itself that counsel has in fact thoroughly reviewed the record. This requirement assures that appointed counsel has diligently provided substantially equal representation to the indigent defendant. In addition, these citations to the record assist the court in determining whether counsel correctly concluded that the appeal is indeed frivolous.

¶ 33 Requiring a detailed history with the appropriate citations for appellate review fulfills the two functions of *Penson* (demonstrating that counsel has thoroughly reviewed the record and that the appeal is so frivolous that it may be decided without further adversarial presentation), 488 U.S. at 81–82, 109 S.Ct. 346, while avoiding the ethical dilemma of briefing the case against the defendant. *Cf. Balfour*, 814 P.2d at 1079–80 (holding that brief containing only a statement of the case, with a statement of the facts, was sufficient to protect an indigent defendant's rights to counsel and equal protection, where counsel is not permitted to withdraw). Thus, our procedure assures adequate representation, yet still provides the adversarial presentation mandated by *Penson* if an arguable issue is found by the court. *See* 488 U.S. at 84, 109 S.Ct. 346.

¶ 34 In addition, under our procedure, counsel cannot withdraw until after the court of appeals has conducted its review. *Shattuck*, 140 Ariz. at 584–85, 684 P.2d at 156–57.[8] If the court finds an arguable issue, it will order appointed counsel to brief the issue.

■ ¶ 35 Moreover, if the defendant perceives that counsel has not effectively assisted in the presentation of his appeal, the defendant may petition for post-conviction relief under our rules. *See State v. Herrera*, 183 Ariz. 642, 905 P.2d 1377 (App.1995) (holding that an allegation of ineffective assistance of appellate counsel is encompassed within ARIZ. R.CRIM. P. 32.1 as a claim that the conviction or sentence was in violation of the federal or state constitution). This procedure provides additional scrutiny of appointed counsel's and the court's determination that the appeal is frivolous.

¶ 36 As previously noted, the court itself reviews the record for reversible error. This review gives the indigent appellant at least one, and as many as four,[9] additional lawyers searching the record for error. We believe this extensive review assists in protecting an indigent defendant's rights to equal protection and due process.[10]

7. We note that *McCoy* approved of, but did not require, this result. 486 U.S. at 443–44, 108 S.Ct. 1895 (noting only that the Wisconsin procedure requiring the attorney to outline why the appeal is frivolous did no injury to *Anders'* constitutional requirements). We think the better practice is to avoid requiring appointed counsel to brief the case against his or her client.

8. The decision not to allow appointed counsel to withdraw is supported by other jurisdictions and the American Bar Association Standards For Criminal Justice. *See* A.B.A. Stand. for Crim. Justice § 4–8.3 (3d ed. 1993) ("Appellate counsel should not seek to withdraw from a case solely on the basis of his or her own determination that the appeal lacks merit."). In addition, section 21–3.2(b) (2d ed. 1980 & Supp.1986) provides as follows:

(i) ... Counsel should endeavor to persuade the client to abandon a wholly frivolous appeal or to eliminate contentions lacking in substance.

(ii) If the client chooses to proceed with an appeal against the advice of counsel, counsel should present the case, so long as such advocacy does not involve deception of the court. When counsel cannot continue without misleading the court, counsel may request permission to withdraw.

9. Those four include the law clerk or staff attorney assigned to review the case and the three judges assigned to decide it.

10. Some courts have recognized an anomaly created by *Anders*. The court in *Wagner* described the review process as multiple-lawyer overkill that "gives the indigent defendant more than he could expect had counsel (whether retained or appointed) decided to press the appeal." 103 F.3d at 552. *See also Wende*, 600 P.2d at 1075 ("We recognize that under this rule counsel may ultimately be able to secure a more complete review for his client when he cannot find any arguable issues than when he raises specific is-

¶ 37 Finally, we note that the appellate structure we have "provides the indigent appellant with at least the same rights that an appellant with the funds to hire counsel would have, *i.e.*, an advocate on the appellant's behalf active to the permissible ethical limit." *Balfour*, 814 P.2d at 1081. Our procedure complies with *Anders'* constitutional requirements by requiring appointed counsel to perform his or her functions in a conscientious, ethical and diligent manner. Moreover, this court's review both assures counsel's compliance with these constitutional standards and provides the indigent defendant with an exhaustive search of the record for error.

¶ 38 We thus conclude that our procedure protects an indigent appellant's rights to counsel, equal protection, and due process— *Anders* requires no more. Accordingly, we decline to follow *Robbins*.

### III.

¶ 39 In his *pro per* brief, Clark raises several issues on appeal. First, Clark claims that the arraignment judge told him he was guilty and that this prejudiced him. Second, Clark asserts that the victims only testified under duress from the police. Third, Clark complains that Detective Sears implied to the grand jury that Clark could actually see, that he was a "good actor." Fourth, Clark claims that the court erred by admitting only a part of his conversation with the sheriff's office dispatcher. Fifth, Clark argues that the trial court violated his speedy trial rights when it forced him to proceed with current counsel rather than allowing him to proceed with new counsel or in *pro per*. Finally, Clark complains that he has not received enough assistance from the prison to meet his special needs in preparing his appeal.

¶ 40 After reviewing the record, we find that it does not support Clark's first two arguments. First, no evidence supports that the arraignment judge told Clark he was guilty, nor that prejudice resulted from such a statement. Second, no evidence exists to show the police coerced any of the State's witnesses. Thus, neither of these arguments supplies an adequate basis for reversing the jury's verdicts.

■ ¶ 41 Clark's third argument asserts that the grand jury would not have indicted him if Detective Sears had testified truthfully regarding Clark's inability to see. We cannot review a defendant's claim that the grand jury did not have probable cause to indict him following a finding of guilt beyond a reasonable doubt. *State v. Gonzales*, 181 Ariz. 502, 507, 892 P.2d 838, 843 (1995); *State v. Charo*, 156 Ariz. 561, 566, 754 P.2d 288, 293 (1988). In any event, Detective Sears testified to the grand jury that Clark was legally blind.

■ ¶ 42 Clark's fourth argument, that the trial court erroneously admitted only a portion of his conversation with the sheriff's office dispatcher, similarly lacks merit. The trial court heard the entire tape during argument on Clark's motion for a new trial and did not believe the evidence warranted a new trial. Clark's rationale for asking for the excluded portions of the tape was that it corroborated Clark's testimony that he never admitted shooting M.L. However, other witnesses at trial corroborated Clark's testimony on this point, including Sergeant Watsak, the officer talking to Clark during the standoff. Clark was not deprived of his ability to fairly and effectively present his case by the admission of only portions of the tape.

¶ 43 Clark's fifth argument is that the trial court violated his speedy trial rights. Before trial, defense counsel and the State jointly requested a continuance to enable them to more effectively prepare their cases. The court asked Clark if he would agree to waive the requested extension of time for speedy trial purposes. Clark refused. Clark demanded an immediate trial and offered to handle the case *pro per*, or alternatively, wanted different counsel appointed so he could have an immediate trial.

■ ¶ 44 We review a trial court's decision granting a continuance to allow counsel

---

sues, for a review of the entire record is not necessarily required in the latter situation."). Since the repeal of A.R.S. section 13–4035,

which required this court to review the record for fundamental error in all criminal cases, that same anomaly exists here.

adequate time to prepare a case for an abuse of discretion. *State v. McWilliams,* 103 Ariz. 500, 501–02, 446 P.2d 229, 230–31 (1968); *State v. LeVar,* 98 Ariz. 217, 220–21, 403 P.2d 532, 535 (1965). "When defense counsel states that he is not adequately or fully prepared on the eve of trial, where the lack of preparation is not due to an absence of diligence on his part, a trial judge does not err in continuing the matter." *State v. Smith,* 146 Ariz. 325, 326–27, 705 P.2d 1376, 1377–78 (App.1985). This result does not change even if the defendant insists on an immediate trial. *Id.* at 327, 705 P.2d at 1378. Thus, we will affirm a trial court's decision granting a continuance, despite a defendant's insistence on an immediate trial, when the facts indicate that defense counsel needs more time to prepare and no evidence exists of a lack of diligence by counsel.

■ ¶ 45 The trial court granted the joint motion for a continuance and denied Clark's motion to proceed *pro per* or to retain new counsel. The court stated that defense counsel was "an experienced and very competent attorney in these matters," and found that the continuance was justified by "extraordinary circumstances and in the interest of justice." It further stated:

> I have carefully weighed the issue of the defendant's desire to go to trial immediately—though his desire to go to trial immediately or represent himself or have counsel is all inconsistent with an immediate trial—and the defendant's constitutional right to at least adequate representation by counsel. I find specifically representation by counsel is more important in this case than trying the case precipitously, either with or without counsel.

Thus, the trial court determined that defense counsel had adequately represented the defendant but that he needed more time to effectively prepare his case. Accordingly, it did not abuse its discretion by granting the joint motion for a continuance or denying Clark's motion for new counsel.[11]

11. We note that the prosecutor joined in the motion to continue due to a scheduling conflict. A trial court may find that a prosecutor's scheduling conflict constitutes extraordinary circum-

¶ 46 Finally, Clark claims that the prison denied him the assistance he needed to adequately prepare his supplemental brief. Specifically, Clark complains that due to his blindness he is entitled to have recordings of the entire trial or have someone read the transcripts to him; additionally, he requests that he be allowed to communicate with the court via tape recorded statements.

■ ¶ 47 The Constitution requires that a prisoner be provided meaningful access to the courts. *Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 821, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). A prisoner's right of access includes a right to have the transcripts of his trial made available to him. *Griffin,* 351 U.S. at 19, 76 S.Ct. 585. It also includes the right to access a law library or have legal assistance provided, but only as a means for ensuring " 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174 (quoting *Bounds,* 430 U.S. at 825, 97 S.Ct. 1491). In other words, a prisoner must demonstrate not only a denial of meaningful access but also that the denial has actually injured his ability to present a meritorious argument to the court. *Id.*

■ ¶ 48 The record does not support Clark's contention that he has been denied meaningful access to the court. First, Clark received copies of the transcripts of his trial. Second, since his counsel's *Anders* brief was filed on February 17, 1998, Clark has filed four documents, including one in which he asked to have considered as his supplemental brief, with this court. These documents reference legal authority and indicate his familiarity with the record. Far from indicating a denial of meaningful access, these pleadings reveal that the prison is providing Clark ample opportunity and assistance to pursue his appeal. Finally, in recognition of Clark's blindness, we granted Clark two extensions of time to file his brief. Thus, from this

stances justifying the continuance of a defendant's trial. *See State v. Mendoza,* 170 Ariz. 184, 194, 823 P.2d 51, 61 (1992).

record, Clark has been given meaningful access to the court.

¶ 49 In addition, Clark has not indicated an actual injury resulting from his alleged denial of access to the court. To show actual injury, Clark must demonstrate that the denial prevented him from asserting some legitimately appealable issue. *Id.* He cannot do so. Appointed counsel filed an *Anders* appeal on his behalf. Clark himself filed a supplemental brief. We have considered and addressed his arguments. Also, we have reviewed the record for reversible error and have found none. Clark cannot show any injury from his alleged denial of access to the court.

### IV.

¶ 50 In summary, we conclude that our procedure for deciding non-meritorious appeals fully complies with the requirements of *Anders.* Thus we decline to follow the Ninth Circuit's decision in *Robbins.* We have also thoroughly reviewed the record and find no reversible error. The record shows that Clark was represented by counsel at all stages of the proceedings and on appeal, and that the trial court afforded Clark all of his rights under the constitution, our statutes, and the Arizona Rules of Criminal Procedure. The evidence supports the jury's verdict, and the sentence imposed falls within the range prescribed by law.

¶ 51 Upon the filing of this decision, counsel's obligations pertaining to the representation of Clark in this appeal have come to an end. Counsel need do no more than inform Clark of the status of his appeal and of his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See Shattuck,* 140 Ariz. at 584–85, 684 P.2d at 156–57. Clark shall have thirty days from the date of this decision in which to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

¶ 52 We affirm Clark's convictions and sentences.

CONCURRING: CECIL B. PATTERSON, JR., Judge, and JEFFERSON L. LANKFORD, Judge.