NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RODERICK WAGONER, *Appellant.*

No. 1 CA-CR 14-0625
FILED 12-31-15

Appeal from the Superior Court in Maricopa County
No. CR2012-135119-001
The Honorable Alfred M. Fenzel, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Droban & Company, PC, Anthem
By Kerrie M. Droban
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Patricia A. Orozco joined.

---

**C A T T A N I**, Judge:

¶1        Roderick Wagoner appeals his conviction of second-degree murder and the resulting sentence.  Wagoner's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after a diligent search of the record, she found no arguable question of law that was not frivolous.  Wagoner was given the opportunity to file a supplemental brief, but did not do so.  Counsel asks this court to search the record for reversible error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).  After reviewing the record, we affirm Wagoner's conviction and sentence.

## FACTS AND PROCEDURAL BACKGROUND

¶2        One evening in July 2012, Wagoner chased the victim across the third floor of a parking structure and stabbed him repeatedly.  The victim tried to get away and climbed over the edge of the structure and hung from a ledge, but Wagoner continued to stab the victim's hands and head until he fell from the third floor.  Wagoner then rode away on a bicycle.  A witness who was later shown a photo-line up identified Wagoner as the attacker.

¶3        The victim survived the fall and told a police officer that "Deshan" (Wagoner's middle name), who he described as a black man with only one arm, was the person who had stabbed him.  The victim died from the stab wounds several hours later.

¶4        Meanwhile, another officer heard the victim's report and thought it described Wagoner, with whom the officer had interacted earlier that day.  Officers went to Wagoner's home to serve a search warrant, and they found him there, along with a stack of papers and clothing, both of which were stained with the victim's blood.  The officers arrested Wagoner and he was charged with second-degree murder.

¶5        After an eight-day trial, a jury found Wagoner guilty as charged, and further found three aggravating factors and that the offense

was dangerous. The superior court noted that Wagoner's two prior felony convictions, which he had admitted while testifying, were an additional aggravating factor, and sentenced him to an aggravated prison term of 20 years, with credit for 795 days of presentence incarceration. Wagoner timely appealed.

## DISCUSSION

¶6         We have read and considered counsel's brief and have reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300. We find none.

¶7         We note that the admission of the victim's statements to police identifying Wagoner as his assailant, *see supra* ¶ 3, presents an arguable confrontation clause issue under *Michigan v. Bryant*, 562 U.S. 344 (2011). Because the victim died, he was not available to testify at trial, and he had not been subject to prior cross-examination by Wagoner. *See id.* at 354. Under these circumstances, admissibility under the Confrontation Clause hinges on whether the primary purpose of victim's statements was testimonial (that is, intended for use at trial or as a substitute for trial testimony) or nontestimonial. *See id.* at 357–59. The primary purpose is assessed objectively, in the context of the then-existing circumstances and in light of the statements and actions of both the interrogator and the declarant. *Id.* at 367. A key circumstance suggesting a nontestimonial purpose is the existence of an ongoing emergency, with the statements intended and/or used to assist in ending a threatening situation. *Id.* at 361. Similarly, informal questioning (as opposed to formal interrogation at the police station) suggests the statements are likely not intended as testimonial. *Id.* at 366.

¶8         Here, the interrogation was short and informal, conducted where the victim was lying on the ground at the base of the parking structure. *See id.* at 366, 377 ("The informality suggests that the interrogators' primary purpose was simply to address what they perceived to be an ongoing emergency, and the circumstances lacked any formality that would have alerted [the victim] to or focused him on the possible future prosecutorial use of his statements."). Moreover, the officer asked only questions relevant to searching for a man in the area with a knife: a potential threat to public safety. *See id.* at 376 (what/who/where questions relevant to address threat). The victim did not indicate that the stabbing was part of a purely private dispute or that Wagoner would not pose a broader threat to the public. *See id.* at 365, 372–73. Similarly, the victim did not say (or perhaps even know) if Wagoner remained in the area or had run away

(which might have suggested that he was no longer a threat to the public). *See id.* at 365. The officer's actions following the victim's statements—looking into cars in the parking structure to ensure the assailant was not hiding there, potentially to stab another person—were also consistent with a response to a perceived ongoing threat to public safety. *See id.* at 363–64. In this factual context, the statements are best understood as nontestimonial, and their admission at trial was thus not barred by the Confrontation Clause.

¶9 Wagoner was present and represented by counsel at all stages of the proceedings against him. The record reflects that the superior court afforded Wagoner all of his constitutional and statutory rights, and that the proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. The court conducted appropriate pretrial hearings, and the evidence presented at trial and summarized above was sufficient to support the jury's verdict. Wagoner's sentence falls within the range prescribed by law, with proper credit given for presentence incarceration.

## CONCLUSION

¶10 Wagoner's conviction and sentence are affirmed.

¶11 After the filing of this decision, defense counsel's obligations pertaining to Wagoner's representation will end after informing Wagoner of the outcome of this appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). On the court's own motion, Wagoner shall have 30 days from the date of this decision to proceed, if he desires, with a *pro se* motion for reconsideration or petition for review.

