NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KYLE LYNN PATTEN, *Appellant.*

No. 1 CA-CR 22-0269
FILED 7-27-2023

Appeal from the Superior Court in Navajo County
No. SO900CR201900742
The Honorable Dale P. Nielson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Zhivago Law, Phoenix
By Kerrie M. Droban Zhivago
*Counsel for Appellant*

Kyle Lynn Patten, San Luis
*Appellant*

_____

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

_____

**C A T T A N I**, Judge:

¶1            Kyle Patten appeals his conviction of burglary in the second degree and the resulting sentence.  Patten's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after a diligent search of the record, she found no arguable question of law that was not frivolous.  Patten filed a supplemental brief raising the three issues addressed below.  Counsel asks this court to search the record for reversible error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).  After reviewing the record, we affirm Patten's conviction and sentence.

**FACTS AND PROCEDURAL BACKGROUND**

¶2            The victim and a roommate lived in an apartment in Show Low.  In August 2019, the victim gave Patten (who was dating the roommate at the time) permission to stay in the garage for a few days.  They never gave Patten a key to the apartment, however, and he was not permitted to be there when they were not home.

¶3            After being woken by Patten yelling in the garage in the middle of the night, the victim told Patten he had to leave the next day.  Patten drove the victim and the roommate to work the next morning, and he asked the victim for gas money.  The victim refused but offered to fill the tank after her shift.  Patten then returned to the apartment, broke through the front window to enter the locked residence, and took a gas can from the garage without permission.

¶4            The victim and her roommate discovered the broken window and missing gas can within a few hours and contacted the police.  Officers discovered Patten's shoeprint on the back of a white couch just inside the broken window.

¶5            A few hours later, Patten messaged the victim and her roommate that he had run out of gas, and he shared his location.  Patten had a red gas can on the hood of his car when police arrived.  He initially

claimed that the gas can was his and denied knowing of the break in, but he later said he had agreed to fix the victim's broken window.

**¶6**      Patten was arrested and charged with burglary in the second degree. After multiple defense attorneys withdrew from representation, the court found that Patten knowingly, intelligently, and voluntarily waived his right to counsel and allowed him to represent himself. Patten testified on his own behalf at the two-day jury trial. He confirmed that he had broken in through the window and taken the gas can from the victim's garage, and he acknowledged having three prior felony convictions. Patten claimed, however, that he had permission to enter the residence, that he broke the window accidentally and intended to repair it, that he only intended to borrow the gas can (not damage or steal anything), and that the whole situation was a "big misunderstanding."

**¶7**      The jury found Patten guilty as charged. The court sentenced him as a category three repetitive offender to a mitigated term of 7.5 years in prison, with credit for 725 days of presentence incarceration. Patten timely appealed.

## DISCUSSION

**¶8**      We have read and considered the briefs in this matter and have reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300. We find none.

## I.    Patten's Supplemental Brief.

**¶9**      Patten challenges the sufficiency of the evidence to support his burglary conviction. We review this issue de novo, viewing the evidence in the light most favorable to sustaining the jury's verdict. *State v. Burns*, 237 Ariz. 1, 20, ¶ 72 (2015). Evidence, whether direct or circumstantial, suffices to support a conviction if "reasonable persons could accept [the proof] as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011) (citation omitted). Conflicting testimony does not undermine the sufficiency of the evidence provided probative evidence supports the verdict. *See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004).

**¶10**      An individual commits second-degree burglary by "entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." A.R.S. § 13-1507(A). And as relevant here, an individual commits theft by knowingly and without

lawful authority "[c]ontrol[ing] property of another with the intent to deprive the other person of such property." A.R.S. § 13-1802(A)(1).

¶11 First, Patten asserts that he lacked intent to deprive the victim of the gas can as necessary to show an intent to commit a theft from the residence. But Patten acknowledged entering the apartment to take the gas can. Although Patten testified that he intended to return the gas can, the victim testified that he took it without permission, and Patten initially told police that the gas can was his. Despite Patten's alternative explanation at trial, the jury could infer the requisite intent from the circumstances. *See Williams*, 209 Ariz. at 231, ¶ 6.

¶12 Second, Patten asserts that he had permission to be in the apartment, so his entry was not unlawful. Although Patten indeed testified to that effect, the victim testified to the contrary that Patten was not allowed in the apartment without her or her roommate present. Witness credibility and the weight to afford testimony are questions reserved exclusively for the jury. *See State v. Cox*, 217 Ariz. 353, 357, ¶ 27 (2007). Despite Patten's conflicting testimony, the victim's testimony provided a sufficient basis for the jury's assessment. *See Williams*, 209 Ariz. at 231, ¶ 6.

¶13 Finally, Patten argues the prosecutor engaged in misconduct by misrepresenting Patten's intended use of an audio recording of the victim. During Patten's testimony, he attempted to tell the jury that the victim asked him on the day of the offense why he had not just gotten the apartment key from the roommate, which he asserts was evidence of permission to enter the residence. The court initially sustained the prosecutor's hearsay objection, but ultimately permitted Patten to tell the jury what the victim had said.

¶14 Patten asserts that the prosecutor lied about the content of the audio recording of the victim's statement and wrongly told the court during a sidebar that Patten intended to use it to impeach the victim rather than as substantive proof of permission. The court concluded that the victim's statement was inadmissible hearsay because it was an out-of-court statement that Patten sought to introduce as proof of the substance of the statement. *See* Ariz. R. Evid. 801(c), 802. The discussion at sidebar about impeachment addressed whether the statement could nevertheless be admitted as a prior inconsistent statement (even though the victim had not been confronted with it when testifying). *See* Ariz. R. Evid. 801(d)(1)(A). In any event, the court in fact permitted Patten to tell the jury about the victim's statement and argue that it showed he had permission to enter the

residence. Any conceivable error during the sidebar was thus necessarily harmless.

## II.     Fundamental Error Review.

¶15        Patten was present at all critical stages of the proceedings against him, and he was represented by counsel until he knowingly and voluntarily waived that right and proceeded to represent himself. The record reflects that the superior court afforded Patten all his constitutional and statutory rights and that the proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. The court conducted appropriate pretrial hearings, and the evidence presented at trial was sufficient to support the jury's verdict. Patten's sentence falls within the range prescribed by law, and Patten has not shown that he was deprived of any presentence incarceration credit to which he was entitled.

## CONCLUSION

¶16        Patten's conviction and sentence are affirmed. After the filing of this decision, defense counsel's obligations pertaining to Patten's representation in this appeal will end after informing Patten of the outcome of this appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). On the court's own motion, Patten has 30 days from the date of this decision to proceed, if he desires, with a *pro se* motion for reconsideration or petition for review.

