NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CHARLES HOWARD FITZPATRICK, JR., *Appellant*.

No. 1 CA-CR 24-0359

FILED 07-31-2025

Appeal from the Superior Court in Yavapai County
No. S1300CR202380051
The Honorable Debra R. Phelan, Judge

**AFFIRMED**

COUNSEL

Huss Law, PLLC, Tempe
By Jeremy L. Huss
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

---

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Judge Paul J. McMurdie joined.

---

**B R O W N**, Judge:

¶1            This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defense counsel has searched the record on appeal and advised us there are no meritorious grounds for reversal. Defendant Charles Howard Fitzpatrick, Jr. was given the opportunity to file a supplemental brief, but he did not do so. Our obligation is (1) to ascertain whether defense counsel has "conscientiously performed" their duty to review the record for arguable issues, and (2) to conduct our own review of the record for reversible error. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).

¶2            In January 2023, a police officer performed a traffic stop after noticing the car Fitzpatrick was driving had a cracked windshield. When the officer asked Fitzpatrick if there were weapons in the car, Fitzpatrick said he had knives. The officer eventually asked if he could look at the weapons, and Fitzpatrick handed him four knives. The officer then inquired whether Fitzpatrick had been to prison, and Fitzpatrick seemed to nod affirmatively. When the officer asked Fitzpatrick if his rights had been restored, Fitzpatrick replied that he could possess the knives if they were considered "pocketknives."

¶3            As pertinent here, the State indicted Fitzpatrick on two counts of misconduct involving weapons, a class 4 felony, in violation of A.R.S. § 13-3102(A)(4), for knowingly possessing a "buck knife with a ten-inch blade" and a "shank with a three and a half-inch blade/metal shank" while he was a "prohibited possessor." At a pretrial conference, Fitzpatrick's appointed counsel told the court that Fitzpatrick wanted to represent himself. After conducting a colloquy, the court determined that Fitzpatrick knowingly, intelligently, and voluntarily waived his right to counsel. The court then ordered Fitzpatrick's appointed counsel to serve as advisory counsel.

¶4            Fitzpatrick was present at the final pretrial conference, held just before jury selection. After a brief recess, the court noted that

Fitzpatrick was not present. A few minutes later, the court explained that court security confirmed Fitzpatrick had left the courthouse. The court then determined his presence was waived because he was voluntarily absent from trial. Following jury selection, the jurors were dismissed for the day, and the court issued a warrant for Fitzpatrick's arrest.

¶5 Fitzpatrick was not present the following day at the beginning of the second day of trial. Despite alerting the court's staff multiple times he was on his way, he did not arrive until after the State had presented its opening statement and conducted direct examination of its first witness, even though the court had waited at least 30 minutes for Fitzpatrick to arrive. While the State was examining its second witness, Fitzpatrick arrived. The court told him he was voluntarily absent the previous day and summarized what had transpired in his absence. The court quashed Fitzpatrick's warrant and he continued to represent himself, with advisory counsel.

¶6 After the lunch break, the trial court attempted to determine whether Fitzpatrick would present any evidence. He asked the court if he could file his "notice of default" and leave, and the court explained what could happen if he left. After further discussion, Fitzpatrick decided to leave, and the court determined he was voluntarily absent from the proceedings. The jury found Fitzpatrick guilty on both counts. The court later sentenced Fitzpatrick to mitigated, concurrent prison terms of six years for each count, with 69 days of presentence incarceration credit.

¶7 After a thorough review of the record, we find no arguable issues for reversal. *Clark*, 196 Ariz. at 541, ¶ 50. The record reflects Fitzpatrick was represented by counsel at all critical stages of the proceedings against him until he waived his right to counsel. Fitzpatrick was voluntarily absent from significant portions of the trial. *See* Ariz. R. Crim. P. 9.1; *see also State v. Love*, 147 Ariz. 567, 570 (App. 1985) ("The constitutionally protected right to be present at all critical stages of trial . . . may be waived if the defendant voluntarily absents himself at trial.").

¶8 To meet its burden of proof, the State was required to establish that Fitzpatrick possessed deadly weapons and that he was a prohibited possessor. A.R.S. § 13-3102(A)(4). A "deadly weapon" is "anything that is designed for lethal use," including a firearm. A.R.S. § 13-3101(A)(1). A prohibited possessor is "any person . . . [w]ho has been convicted . . . of a felony. . . and whose civil right to possess or carry a firearm has not been restored." A.R.S. § 13-3101(A)(7)(b).

**¶9** The State presented testimony and evidence showing that Fitzpatrick had prior felony convictions and that his rights had not been restored. A law enforcement officer testified about the training and experience he had in dealing with knives, noting that "one of the main ideas they give you instructionally with knives is that they are lethal." The officer explained that a knife kills a person by penetrating the "vital parts of [the] body." Referencing the buck knife, he testified it was a "Rambo-style knife" like "we see in the movies," and it had the "features that are common in fighting knives." Describing the shank, the officer testified it was originally a file but had been "filed down" to a "sharp point" that "[c]ould be used to stab" and "easily penetrate the neck area."

**¶10** The evidence supports the convictions, and the sentences imposed fall within the range permitted by law. As far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Fitzpatrick's constitutional and statutory rights.

**¶11** We affirm Fitzpatrick's convictions and sentences. Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, his obligations are fulfilled once he informs Fitzpatrick of the outcome of this appeal and his future options. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Fitzpatrick may file either a pro se motion for reconsideration or a petition for review within 30 days of the date of this decision. If he files a timely motion for reconsideration, he has 15 days after that motion is decided to file a petition for review. *See* Ariz. R. Crim. P. 31.21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR