NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

KIMBERLY ANN KNIGHT, *Appellant*.

No. 1 CA-CR 13-0297
FILED 4-29-2014

---

Appeal from the Superior Court in Yuma County
No. S1400CR201200058
The Honorable John Neff Nelson, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Edward F. McGee
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Kenton D. Jones joined.

---

**S W A N N**, Judge:

**¶1**        Defendant Kimberly Ann Knight appeals from her convictions and sentences for child abuse and aggravated assault, both domestic violence offenses. This case comes to us as an appeal under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Defendant's appellate counsel has searched the record on appeal and found no arguable, nonfrivolous question of law, and asks us to review the record for fundamental error. *See Anders*, 386 U.S. 738; *Smith v. Robbins*, 528 U.S. 259 (2000); *State v. Clark*, 196 Ariz. 530, 2 P.3d 89 (App. 1999). Defendant was given the opportunity to file a supplemental brief *in propria persona* but did not do so.

**¶2**        We have searched the record for fundamental error and find none. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶3**        In the afternoon of December 25, 2011, Defendant's husband called 911 and reported that his and Defendant's six-month-old son J.S. ("Son") had stopped breathing. Paramedics arrived at Defendant's home and transported Son to Yuma Regional Medical Center where emergency room staff stabilized his condition. Son was thereafter airlifted to Phoenix Children's Hospital ("PCH") to receive specialized treatment for acute head injuries. A police investigation into the causes of Son's injuries led the state to indict Defendant on one count of child abuse and one count of aggravated assault, both charged as class 2 felonies involving domestic violence against an infant child in her care.

**¶4**        At trial, the state presented evidence of the following relevant facts. Dr. Pottker, a specialist in pediatric emergency medicine who evaluated Son at PCH, testified that Son had suffered hypoxic ischemic injury caused by deprivation of oxygen and adequate blood perfusion to his brain for a significant period of time. Dr. Pottker explained that Son presented with brain swelling and a subdural hematoma commonly resulting from abusive head trauma. According to

Dr. Pottker, an infant could theoretically suffer hypoxic ischemic injury as a consequence of falling from a height. But given the combination and global nature of Son's severe symptoms, and the absence of any indication that an impact injury had caused them, Dr. Pottker concluded to a reasonable degree of medical certainty that Son had endured nonaccidental trauma.

¶5         Dr. Condie, a pediatric neuro-intensivist who treated Son at PCH, testified that Son had suffered a diffuse brain injury and similarly ruled out an impact injury as the cause. Based on MRI examination results, Dr. Condie opined that Son sustained his injuries at most three days before his hospitalization. A later MRI examination revealed swelling and fluid collection in the soft tissue at two points behind the spinal cord, which Dr. Condie opined were consistent with the kind of trauma caused by someone grabbing Son. Dr. Condie concluded to a reasonable degree of medical certainty that Son's injuries were caused by inflicted head trauma, which he explained used to be referred to as "shaken baby syndrome" before that became considered a misnomer.

¶6         Sergeant Rodriguez, who supervised the police investigation into Son's injuries, testified about his interactions with Defendant. Defendant told Rodriguez during an initial interview that Son had been a healthy baby and that on the day of the incident he suddenly began to act differently. Defendant stated that on that day she had given Son a bath and placed him on her bed, turned around to get baby powder off a dresser and observed him acting strange in the dresser mirror, and then as she turned back around he screamed and stopped breathing. Defendant repeatedly denied that she had dropped Son or that he had otherwise fallen. Upon returning from a break in the interview, Rodriguez overheard Defendant tell her husband in a cell phone conversation that Son had fallen off the bed a week earlier. When Rodriguez confronted Defendant about that incident she explained that Son had rolled off the bed and hit his head but had not exhibited any harm from it in the past week. Defendant eventually told Rodriguez that before putting Son on the bed on December 25, she had placed him on a towel on the bathroom floor where he had rolled over and hit his head on the tile. Rodriguez escorted Defendant back to her home so that she could show him how Son had sustained his injuries. Defendant demonstrated how Son had rolled over on the bathroom floor and how afterwards she had laid him down on her bed and turned away to grab baby powder. Defendant first demonstrated how she had turned around in one direction but then immediately claimed that she had turned around in the opposite direction. Rodriguez testified that he believed Defendant changed her

demonstration because she realized that Son would not have been visible in the dresser mirror if she had turned around the first way. Rodriguez explained, however, that Defendant's body would have blocked her view of Son in the mirror regardless of which direction she may have turned. Recorded interviews with Defendant were admitted into evidence and played for the jury.

¶7        Defendant in turn took the stand and confirmed that she had given birth to Son on June 10, 2011. She testified that Son had fallen off the bed a second time on December 25, 2011, but she had not seen him fall because she was turned away and her husband had not seen the fall either because he was in a different room. Defendant confirmed that Son's first fall off the bed a week earlier had not caused her any serious concerns because he appeared unharmed. Defendant conceded, however, that she had lied to Rodriguez about Son hitting his head on the bathroom floor. She explained that she had lied because she was afraid of her husband hurting her if he discovered that she had not paid close enough attention to Son. Defendant described her husband as physically abusive and suffering from mental health problems. Defendant testified that she had not been truthful with Rodriguez because she was afraid of her husband. Defendant denied having knowingly or intentionally harmed Son and maintained that her only mistake was being inattentive and allowing him to roll off the bed.

¶8        In closing argument the prosecutor emphasized that Defendant had offered six different explanations for how Son had sustained his injuries, and asserted that only Defendant's own testimony contradicted the expert medical testimony of Drs. Pottker and Condie that Son had suffered intentionally inflicted trauma.

¶9        The jury found Defendant guilty as charged. The sentencing judge remarked:

> [F]rom the standpoint of the evidence in this case there isn't any question that you were the one that permanently damaged your child. There's no evidence that your husband did it. There's no evidence it was an accident. The evidence was overwhelming that you damaged that child. . . . [T]his is the first case I think I've ever experienced where the evidence from the experts, from the doctors was so absolute. There was no hesitation, absolutely no doubt in their mind[s] that this was an inflicted injury on this child. It wasn't an accident.

The court imposed presumptive, concurrent prison sentences of 17 years on each count and granted Defendant 449 days of presentence incarceration credit. Defendant timely appeals.

## DISCUSSION

**¶10** The record reveals no fundamental error. Defendant was present and represented at all critical stages. The record shows no evidence of jury misconduct and the jury was properly comprised of 12 jurors. *See* A.R.S. § 21-102(A); Ariz. R. Crim. P. 18.1(a).

**¶11** The evidence that the state presented at trial was properly admissible and was sufficient to support Defendant's convictions. A person is guilty of class 2 felony child abuse if she, under circumstances likely to produce death or serious physical injury, intentionally or knowingly causes a child under the age of 15 to suffer physical injury or permits the person or health of that child to be injured while in her care or custody. A.R.S. § 13-3623(A)(1). A person is guilty of class 2 felony aggravated assault if she intentionally, knowingly or recklessly causes serious physical injury to a victim under the age of 15. A.R.S. §§ 13-1203(A)(1), -1204(A)(1), (D). Child abuse and aggravated assault may be properly charged as domestic violence offenses when the victim is the defendant's minor child. A.R.S. § 13-3601(A)(4). Child abuse under A.R.S. § 13-3623(A)(1) and aggravated assault under A.R.S. § 13-1204(A)(1) committed against a victim under the age of 15 are properly classified as dangerous crimes against children for sentencing purposes. A.R.S. § 13-705(P). Here, the state presented ample circumstantial evidence that Defendant's six-month-old son suffered severe physical injuries while in her care, and that those injuries were consistent with intentionally inflicted trauma for which Defendant failed to offer any credible explanation.

**¶12** At sentencing, Defendant was given an opportunity to speak and the court stated on the record the evidence and materials it considered and the factors it found in imposing sentence. The court imposed legal sentences for the offenses, *see* A.R.S. §§ 13-705(D), -1204(D), -3623(A)(1), and correctly calculated Defendant's presentence incarceration credit under A.R.S. § 13-712(B).

**¶13** Defendant has asked her appellate counsel to argue "[t]hat she is not guilty because she did nothing to injure her child." Appellate counsel appropriately declined to develop Defendant's argument. This court does not reweigh the evidence, but rather views it in the light most favorable to sustaining the conviction and resolves all reasonable

inferences against Defendant. *See State v. Kreps*, 146 Ariz. 446, 449, 706 P.2d 1213, 1216 (1985). The test is whether there is substantial evidence to support a guilty verdict, which means evidence sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Id.* In this case, there was substantial evidence to support the jury's verdicts.

¶14 Defendant has also asked her appellate counsel to argue "[t]hat her trial lawyer was ineffective for having failed to retain an[ ] independent medical expert." We likewise agree with appellate counsel's assessment of this argument; regardless of merit, ineffective assistance of counsel claims cannot be raised on direct appeal and must instead be presented to the trial court in a petition for post-conviction relief under Ariz. R. Crim. P. 32. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002).

## CONCLUSION

¶15 We have reviewed the record for fundamental error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We therefore affirm Defendant's convictions and sentences.

¶16 Defense counsel's obligations pertaining to this appeal have come to an end. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Unless, upon review, counsel discovers an issue appropriate for petition for review to the Arizona Supreme Court, counsel must only inform Defendant of the status of this appeal and Defendant's future options. *Id.* Defendant has 30 days from the date of this decision to file a petition for review *in propria persona*. *See* Ariz. R. Crim. P. 31.19(a). Upon the court's own motion, Defendant has 30 days from the date of this decision in which to file a motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
FILED: MJT