NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

JESUS BLAS GARCIA, *Appellant*.

No. 1 CA-CR 13-0438

FILED 07-31-2014

---

Appeal from the Superior Court in Maricopa County
No.  CR2012-00616-002
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Cory Engle
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

---

**W I N T H R O P**, Judge:

**¶1** Jesus Blas Garcia ("Appellant") appeals his conviction and sentence. Appellant's counsel has filed a brief in accordance with *Smith v. Robbins*, 528 U.S. 259 (2000); *Anders v. California*, 386 U.S. 738 (1967); and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), stating that he has searched the record on appeal and found no arguable question of law that is not frivolous. Appellant's counsel therefore requests that we review the record for reversible error. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999). In addition, this court has allowed Appellant to file a supplemental brief *in propria persona*, but he has not done so.

**¶2** We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statute ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and 13-4033(A) (West 2014).[1] Finding no reversible error, we affirm.

**FACTS AND PROCEDURAL HISTORY[2]**

**¶3** On October 9, 2011, victim A.M. was working as a pharmacist at a Phoenix pharmacy. At approximately 1:30 p.m., a woman handed A.M. a note demanding "all of your percocet 35 and oxy 80, don't say a word or I'll start shooting." A.M. noticed a man standing next to the woman; the man was holding a gun at hip level, pointing it at A.M. A.M. later identified the man in a pre-trial photo lineup and in court as

---

[1] Although the Arizona Legislature amended statutes cited in this decision after Appellant's indictment, the revisions are immaterial. Thus we cite to the current version of these stautes.

[2] We review the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant. *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

Appellant. Appellant waved the gun at A.M., and she gathered oxycodone[3] pills and placed them in a bag. After A.M. gave the bag of pills to Appellant, the woman forced A.M. to return the note. A.M. valued the stolen medication at approximately $3557. In court, the woman admitted she handed the note to A.M., and identified herself from surveillance photographs of the robbery. A Phoenix police officer testified that, when interviewed, Appellant admitted he had participated in the robbery.

¶4 Later that week, on October 14, 2011, victim K.S. was working as a pharmacist at a second Phoenix pharmacy. That afternoon, a man approached the pharmacy counter and handed him a note demanding oxycodone pills. The man pulled up his shirt to show K.S. a gun tucked into his waistband. K.S. retrieved oxycodone pills from the store's safe and gave the medication to the man. K.S. valued the stolen medication at approximately $3120. Throughout the robbery, a woman stood behind the man; K.S. testified he thought she was "watching the scene and making sure that everything was safe for him to keep on going with his task." In court, that woman admitted that she participated in the robbery with Appellant. A Phoenix police officer testified Appellant said that during the robbery he had carried a B.B. gun painted to look like a .45 caliber gun. According to the officer, Appellant also admitted he and an accomplice sold the stolen pills.

¶5 The next week, on October 20, 2011, victim F.K. was working as a pharmacist at a third Phoenix pharmacy. During the early afternoon, a man passed her a note instructing her to be quiet and get oxycodone. F.K. noticed the man had a gun tucked into his pants. At trial, F.K. identified Appellant as the man. F.K. bagged oxycodone pills and gave the bag to Appellant, who left the store with another man. F.K. valued the stolen medication at approximately $887.

---

[3] Oxycodone is "[a]n opioid agonist administered orally . . . to manage moderate to severe pain." Donald Venes et al., *Taber's Cyclopedic Medical Dictionary* 1670 (21st ed. 2009). Oxycodone is commercially available in various formulations, including OxyContin and Percocet. Oxycontin is "[o]xycodone in a long-acting form." *Id.* Percocet is a formulation of oxycodone and acetaminophen. Judith Harper Deglin & April Hazard Valleran, *Davis's Drug Guide for Nurses* (11th ed. 2009). While the record reflects various amounts of oxycodone, Oxycontin, and Percocet were stolen, hereafter we will refer to oxycodone exclusively.

¶6            Less than a week later, on October 25, 2011, victim T.P., a pharmacy technician, was working at a fourth Phoenix pharmacy. A woman handed T.P. a note demanding oxycodone, and a man pointed a gun at her. As a technician, T.P. was unable to open the narcotic safe herself. She handed the note to victim W.W., a pharmacist, who removed the medication from the safe. When W.W. handed the pills to Appellant, the woman made T.P. return the note. In court, the woman identified herself, Appellant, and another accomplice who served as a lookout from surveillance photographs of the robbery. The lookout identified Appellant from the surveillance photographs, and confirmed Appellant had been armed with a gun. W.W. valued the stolen pills at approximately $769. T.P. and W.W. later identified both the man and the woman from photo lineups. In court, both victims identified the man as Appellant.

¶7            The next day, October 26, 2011, victim J.V., a pharmacy technician, was working at a fifth Phoenix pharmacy. That afternoon, a woman handed J.V. a note demanding oxycodone. J.V. gave the note to the pharmacist, victim J.D. When J.D. looked up from the note, the man showed her a gun. She later identified the man and the woman from police photo lineups. J.D. bagged several bottles of oxycodone pills and gave them to the man. J.D. testified the pills were worth approximately $5833. In court, the woman who handed J.V. the note identified herself, Appellant, and a second accomplice from surveillance photographs of the robbery. The second accomplice testified that Appellant had carried a gun.

¶8            Less than a week later, on October 30, 2011, victim K.W. was working as a pharmacist at a sixth Phoenix pharmacy. A man walked up to the pharmacy counter and handed her a note demanding oxycodone, threatening to shoot her if she did not comply. In court, K.W. identified Appellant as the man. K.W. gathered oxycodone pills from the narcotic safe, bagged them, and handed them to Appellant. The pills were valued at approximately $3625.

¶9            Later that same day, a man handed a note to victim N.P., a pharmacist at a seventh Phoenix pharmacy. He was accompanied by another man. The note demanded oxycodone, and stated that they had a gun. The man lifted his shirt to show N.P. what she assumed was a gun. She then retrieved the pills, placed them in a bag, and gave the bag to the man who had given her the note. The pills were worth approximately $145.

¶10 Less than two weeks later, on November 11, 2011, victim H.D., a pharmacy technician, was working at an eighth Phoenix pharmacy. A man approached the pharmacy counter, handed H.D. a note demanding oxycodone, and showed H.D. a gun. The man's accomplice opened his jacket to reveal a second gun. As he was unable to access the narcotic safe himself, H.D. handed the note to victim P.P., a pharmacist. P.P. retrieved oxycodone pills from the pharmacy safe and gave them to the men. The pills were worth approximately $22,268. In court, P.P. identified Appellant as one of the men who robbed her. A Phoenix police officer testified that, during an interview, Appellant's accomplice identified himself and Appellant from surveillance photos of the robbery. The accomplice also admitted that during the robbery he carried a B.B. gun painted to look like a .45 caliber gun.

¶11 Later that month, Chandler police officers arrested Appellant on unrelated matters. Upon impounding his property, police found a note with Appellant's personal property linking him to the oxycodone robberies that read, "Be quiet. Give me all Percocet 30mm and the oxy 80mm that you have." The Chandler Police Department contacted the Phoenix Police Department, which then interviewed Appellant in connection with the robberies. During the interview, Appellant revealed the names of his accomplices.

¶12 In February 2012, a grand jury issued an indictment charging Appellant with twenty-one counts stemming from the series of robberies. The State charged Appellant with eleven counts of armed robbery, each a class two dangerous felony, in violation of A.R.S. §§ 13-3408; eight counts of possession of narcotic drugs for sale, each a class two felony, in violation of A.R.S. §§ 13-3408; one count of misconduct involving firearms, a class four felony, in violation of A.R.S. §§ 13-3102, stemming from the October 9, 2011 robbery; and one count of illegal control of an enterprise, a class three felony, in violation of A.R.S. §§ 13-2312, stemming from the series of robberies. The State also alleged four historical priors that would subject Appellant to enhanced sentencing.

¶13 The State further alleged that the counts stemming from each separate robbery were all multiple offenses committed on the same occasion, but consolidated for trial such that each group would be a prior for the others. The State later alleged six aggravating factors, including the presence of an accomplice and the use, threatened use or possession of a deadly weapon or dangerous instrument during the commission of the

crime.[4]   Before trial, the court granted the State's motion to dismiss the count of illegal control of an enterprise.

¶14            After an eleven day trial, the twelve-person jury found Appellant guilty of the charged offenses.   For each count of armed robbery, the jury found the State proved the aggravating factor of infliction or threatened infliction of serious physical harm.  The jury also found the State proved the aggravating factor of presence of an accomplice for all counts, excepting the charge of misconduct involving weapons.   For each count of armed robbery, the jury found the State proved the aggravating factor of pecuniary gain.   For each count of possession of narcotics for sale, the jury found the State proved the aggravating factor that the value of the drugs involved was over the statutory threshold of $1000.   The jury also concluded that the armed robbery counts stemming from the October 9, October 14, October 20, October 25, and November 11 incidents were serious and violent offenses pursuant to A.R.S. § 13-706.

¶15            At sentencing, the trial court found Appellant had four historical prior felony convictions for enhancement purposes.   The trial court also found Appellant had been previously convicted of all counts in the instant case, as those cases had been consolidated for trial.

¶16            After review of the presentence investigation report, the trial court organized the convictions into six groups, imposing six sets of concurrent sentences to be served consecutively to one another.   For the counts stemming from the October 9 robbery, the court imposed an aggravated sentence of 21 years, and two presumptive sentences, each 15.75 years.   For the counts stemming from the October 14 robbery, the court imposed a presumptive sentence of 21 years, and a presumptive sentence of 15.75 years.   For the counts stemming from the October 25 robbery, the court imposed a presumptive sentence of 28 years, and two presumptive sentences of 15.75 years.   For the counts stemming from the October 20 and October 26 robberies, the court imposed a presumptive sentence of 28 years, and three presumptive sentences of 15.75 years.   For the counts stemming from the October 30 robberies, the court imposed four presumptive sentences of 15.75 years.   For the counts stemming from the November 11 robberies, the court imposed a presumptive sentence of 28 years, and two presumptive sentences of 15.75 years.   Appellant also

---

[4]      The parties agreed to stipulate that Appellant was a prohibited possessor on October 9, 2011.

received 435 days of presentence incarceration credit. Appellant filed a timely notice of appeal.

**ANALYSIS**

¶17          We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881; *Clark*, 196 Ariz. at 537, ¶ 30, 2 P.3d at 96.

¶18          Appellant was charged with eleven counts of armed robbery, in violation of A.R.S. § 13-1904(A)(2). Under A.R.S. § 13-1904(A)(1), "A person commits armed robbery if, in the course of committing a robbery as defined in §§ 13-1902, such person or an accomplice . . . is armed with a deadly weapon or a simulated deadly weapon." Under A.R.S. § 13-1902(A), "A person commits armed robbery if in the course of taking any property of another from his . . . immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." Appellant was also charged with eight counts of possession of narcotics for sale, in violation of A.R.S. § 13-3408(A)(2). Under A.R.S. § 13-3408(A)(2), "A person shall not knowingly . . . possess a narcotic drug for sale."

¶19          Appellant stipulated that on October 9, 2011, he was a prohibited possessor of a firearm, in violation of A.R.S. § 13-3101(A)(7). The relevant subparts of A.R.S. § 13-3101(A)(7) define "prohibited possessor" as "any person . . . who has been found to constitute a danger to self or others . . . pursuant to court order . . . and whose right to possess a firearm  has not been restored" and "any person who is an undocumented alien or a nonimmigrant alien traveling with or without documentation in this state." A.R.S. § 13-3101(A)(7)(b), (e).

¶20          The evidence presented at trial was substantial and supports the verdict, and the sentencing proceedings followed the statutory requirements. Appellant was represented by counsel at critical stages of the proceedings and was given the opportunity to speak at sentencing. The proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

¶21          After filing of this decision, defense counsel's obligations pertaining to Appellant's representation in this appeal have ended. Counsel need do no more than inform Appellant of the status of the appeal and of his future options, unless counsel's review reveals an issue appropriate for petition for review to the Arizona Supreme Court. *See*

*State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Appellant has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

## CONCLUSION

¶22        Appellant's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: gsh