NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

STATE OF ARIZONA, *Appellee,*

*v.*

ANDREW JOSEPH MAESTAS, *Appellant.*

No. 1 CA-CR 13-0766
FILED 10-28-2014

_____

Appeal from the Superior Court in Maricopa County
No. CR2012-156431
The Honorable Lisa Ann Vandenberg, Judge *Pro Tempore*

**AFFIRMED**

_____

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Charles R. Krull
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Kent E. Cattani joined.

---

**K E S S L E R**, Judge:

¶1         Defendant-Appellant Andrew Joseph Maestas ("Maestas") was tried and convicted of resisting arrest and aggravated assault. The superior court sentenced him to four years' imprisonment. Counsel for Maestas filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Clark*, 196 Ariz. 530, 2 P.3d 89 (App. 1999). Finding no arguable issues to raise, counsel requests that this Court search the record for fundamental error. Appellant was given the opportunity to, but did not file a supplemental *pro per* brief. For the reasons that follow, we affirm Maestas's conviction and sentence.

**FACTUAL AND PROCEDURAL HISTORY**

¶2         On October 30, 2012, Glendale Police Officer K.R. ("Officer K.R."), driving a marked Glendale Police patrol car and wearing a police uniform that included police badges and patches on the front, sides, and back, responded to a call regarding a domestic dispute. When Officer K.R. pulled near the home, he encountered Maestas's girlfriend, who was crying, nervous, and upset, and appeared to have minor cuts and bruises. Maestas's girlfriend told Officer K.R. that she had been in a fight with Maestas.[1]

¶3         While speaking to Maestas's girlfriend outside, Officer K.R. heard people arguing inside the home. Officer K.R. approached the front door of the residence in order to investigate, but testified no one in the house responded when he knocked and announced that he was with the police two or three times.[2] Maestas's girlfriend opened the door for Officer

---

[1] Although Officer K.R. noted it appeared Maestas's girlfriend had been drinking, he did not feel that her information was inaccurate.

[2] Maestas testified that he did not hear Officer K.R. knock or announce himself, and that the first time he became aware of Officer K.R. was when he was already in the house.

K.R., from the outside. With the door open, Officer K.R. saw two men inside, Maestas and his girlfriend's brother ("A.K."). When Officer K.R. told Maestas he needed to speak with him, Maestas responded with profanity and a verbal refusal to do anything Officer K.R. said, going so far as to approach Officer K.R. and taking an "aggressive stance."[3]

¶4 As Maestas was not cooperating, Officer K.R. told Maestas he was being placed under arrest and attempted to put Maestas in an arm bar. Maestas then swung back with his elbow at Officer K.R.[4] Officer K.R. testified that Maestas tried to kick back at him, forcing him to attempt to place Maestas on the ground to keep Maestas from struggling. Officer K.R. fell to the ground while attempting to ground Maestas, and they ended up in a "wrestling match."[5] A.K. testified that during this struggle, Maestas lunged towards Officer K.R. Officer K.R. got up, at which point Maestas wrapped his arms around Officer K.R.'s legs. Concerned for his safety at that point, Officer K.R. disengaged from Maestas and deployed his Taser to end the scuffle.[6]

¶5 Maestas was charged with one count of resisting arrest, a class six felony and one count of aggravated assault, a class five felony. After a trial, a jury convicted Maestas on all counts. The superior court concluded that there had been sufficient evidence of two prior historical felony convictions, as one was admitted by Maestas during trial and the court found the other based on evidence presented by the State. The court also found, with regards to the conviction for aggravated assault, that there were mitigating factors. As such, the superior court sentenced Maestas to a presumptive term of 3.75 years' imprisonment for resisting arrest to run concurrently with a mitigated term of 4 years' imprisonment for aggravated assault.

¶6 Maestas's appeal is timely. This Court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona

---

[3] Maestas insisted he responded calmly to the officer, however A.K. testified that Maestas was very resistant to Officer K.R.'s demands.

[4] Maestas testified that, due to injuries on his left wrist, he jerked back in pain and not in an attempt to hurt Officer K.R.

[5] Maestas testified that Officer K.R. repeatedly punched him in the face, after taking him to the ground; however, Officer K.R. testified he struck Maestas in the face with his knee only to create distance during the struggle.

[6] Officer K.R. testified he believed that he deployed his Taser only once, however Maestas and A.K. both testified that Officer K.R. tased Maestas three times.

Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003) and 13-4033(A)(1) (2010).

## DISCUSSION

**¶7**        In an *Anders* appeal, this Court must review the entire record for fundamental error.  Error is fundamental when it affects the foundation of the case, deprives the defendant of a right essential to his defense, or is an error of such magnitude that the defendant could not possibly have had a fair trial.  *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005); *State v. Gendron,* 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991).

**¶8**        After reviewing the entire record, we find no meritorious grounds for reversal of Maestas's convictions or modification of the sentences imposed.  The record reflects Maestas had a fair trial and the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure.  The evidence supports each of the convictions.

I.    Sufficiency of Evidence

**¶9**        In reviewing the sufficiency of evidence at trial, "[w]e construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998).  "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (quoting *State v. Scott*, 113 Ariz. 423, 424–25, 555 P.2d 1117, 1118–19 (1976)).

      A.    Resisting Arrest

**¶10**        One resists arrest by "intentionally preventing or attempting to prevent a person reasonably known by [one] to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by . . . [u]sing or threating to use physical force against the peace officer or another . . . [or u]sing any other means creating a substantial risk of causing physical injury to the peace officer or another."  A.R.S. § 13-2508(A) (2013).[7]

**¶11**        As summarized *supra*, ¶¶ 2-3, the State presented evidence that Maestas had reason to know that the victim, Officer K.R., was a peace officer engaged in his official duties.  Further, Officer K.R. and A.K. testified

---

[7] We cite to the current versions of statutes when no changes material to this decision have since occurred.

that once the door was open, and before Officer K.R. attempted to arrest Maestas, Officer K.R. was clearly visible and easily identifiable as a police officer. The State also submitted testimony to show that Maestas used force and the threat of force to resist arrest. *Supra*, ¶¶ 3-4. Although Maestas insisted during trial that he responded calmly to the officer and jerked his arm in pain, rather than in an attempt to hurt Officer K.R., we construe the evidence in the light most favorable to affirming the judgment and will affirm unless there is a complete absence of probative facts to support the conviction. *Supra*, ¶ 9. Accordingly, we conclude that there is sufficient evidence to support Maestas's conviction on the count of resisting arrest.

### B.  Aggravated Assault

**¶12**      Assault, as defined by A.R.S. § 13-1203(A)(2) (2010), is "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury." One commits aggravated assault when one "commits the assault knowing or having reason to know that the victim is . . . [a] peace officer, or a person summoned and directed by the officer while engaged in the execution of any official duties." A.R.S. § 13-1204(A)(8)(a) (2013).

**¶13**      Once again, the record shows sufficient evidence that Maestas intentionally placed Officer K.R. in reasonable apprehension of physical injury. *Supra*, ¶¶ 3-4. Further, as previously addressed, the State presented evidence that Maestas knew or had reason to know that Officer K.R. was a police officer.

**¶14**      Given this testimony and evidence, we conclude that there is sufficient evidence to support Maestas's conviction on the count of aggravated assault.

### II.  Presentence Incarceration Credit

**¶15**      Presentence incarceration credit is given for time spent in custody beginning on the day of booking, *State v. Carnegie*, 174 Ariz. 452, 454, 850 P.2d 690, 692 (App. 1993), and ending on the day before sentencing. *State v. Hamilton*, 153 Ariz. 244, 246, 735 P.2d 854, 856 (App. 1987).

**¶16**      Here, the presentencing report indicated that Maestas had served seventy-eight days of presentence incarceration. At sentencing, the superior court added eleven days to Maestas's presentence incarceration credit, because the original sentencing date was postponed. Both the transcript and minute entry reflect the court gave Maestas credit for eighty-nine days.

¶17　　　However, by our calculation, Maestas was incarcerated for seventy-three days prior to sentencing. A bench warrant for Maestas's arrest was issued July 11, 2013. Maestas was arrested July 20, 2013. Therefore, although Maestas was incarcerated for seventy-three days, he received credit for eighty-nine days. Any illegal sentence that favors the appellant cannot be corrected unless the State has filed a timely cross-appeal. *State v. Dawson*, 164 Ariz. 278, 286, 792 P.2d 741, 749 (1990) ("In the absence of a timely appeal or cross-appeal by the state seeking to correct an illegally lenient sentence, an appellate court has no subject matter jurisdiction to consider that issue."). Therefore, this Court will not modify Maestas's presentence incarceration credit.

## CONCLUSION

¶18　　　After careful review of the record, we find no meritorious grounds for reversal of Maestas's conviction or modification of the sentence imposed. The evidence supports the verdict, the sentence imposed was within the sentencing limits, and Maestas was represented at all stages of the proceedings below. Accordingly, we affirm Maestas's conviction and sentence.

¶19　　　Upon the filing of this decision, counsel shall inform Maestas of the status of the appeal and his options. Defense counsel has no further obligations, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). Maestas shall have thirty days from the date of this decision to proceed, if he so desires, with a *pro per* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: gsh