NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

STEPHEN LENDSEY, *Appellant*.

No. 1 CA-CR 13-0820
FILED 3-24-2015

---

Appeal from the Superior Court in Maricopa County
No. CR2012-136019-001
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kathryn L. Petroff
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Lawrence F. Winthrop joined.

---

**G E M M I L L**, Judge:

¶1          Stephen Earl Lendsey, III appeals from his conviction for resisting arrest, a class 6 felony.  Lendsey's counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), stating that he has searched the record and found no arguable question of law and requesting that this court examine the record for reversible error.  Lendsey was afforded the opportunity to file a *pro se* supplemental brief but did not do so.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999).  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          "We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the convictions."  *State v. Powers*, 200 Ariz. 123, 124, ¶ 2, 23 P.3d 668, 669 (App. 2001).  The following evidence was admitted at trial.

¶3          On the night of July 7, 2012, Stephen Lendsey, accompanied by his friend Kimo Williams, visited the T&A Cabaret (hereinafter, "the club") on South Central Avenue in Phoenix.  Management became concerned with Lendsey's aggressive behavior around other patrons almost immediately upon his entry.  Toward the end of the evening, Lendsey was kicked out and escorted to the parking lot because of his rowdy behavior.  Lendsey became very angry, prompting management to issue him a refund in order to avoid further issues.

¶4          Before leaving the parking lot, however, Lendsey pulled a six-shooter revolver out of his pocket and waived it at the security guard.[1]  The club's management, watching from a live video feed, called the police. Eventually, Lendsey retreated into his vehicle.

¶5          The police arrived nearly instantaneously because the police station was directly across the street from the club.  The security guard pointed the responding officer, Officer G., to the car in which Lendsey was sitting.  Officer G. asked Lendsey to show his hands because he could see that Lendsey was putting something on the floor of the vehicle or under the

---

[1]  The facts surrounding the incident between the security guard and Lendsey have been significantly abridged as they are immaterial to the specific issue of this appeal, as explained below.

seat. After a few seconds, Lendsey showed Officer G. his hands and, when asked, claimed not to have a weapon. According to Officer G.'s testimony, Lendsey was belligerent and yelling about officer racism. After many attempts of asking Lendsey to step out of the vehicle, Officer G. had to physically grab and pull him out of the door due to his noncompliance. Lendsey continued to curse and yell that he was being treated unfairly because of his race. Officer G. testified that he could smell alcohol on Lendsey's breath and his eyes were bloodshot.

¶6 Lendsey persisted in being noncompliant with Officer G.'s demands and "turned into" the officer so as to prevent the officer from putting on the handcuffs. Officer B. arrived and helped the handcuffing process: each officer had to grab one of Lendsey's arms and push him against the vehicle to gain control. Due to Lendsey's large stature and noncompliance, the officers had to use two sets of handcuffs to secure him.

¶7 In order to get Lendsey into the patrol car the officers had to resort to different escort holds, such as the "whizzer," because Lendsey was pushing and pulling in every direction. Eventually other officers showed up and together they were able to get Lendsey into the back of the car by pushing and pulling from different sides.

¶8 After securing Lendsey, Officer G. searched Lendsey's vehicle and uncovered a loaded revolver from under the seat. At some point Lendsey had to be moved to a larger police vehicle—a Tahoe—because of, among other things, Lendsey's large size. Lendsey still did not comply during his transfer to the Tahoe.

¶9 Lendsey was charged with aggravated assault, a class 3 felony, and resisting arrest, a class 6 felony. After all of the evidence and testimony was presented, on July 18, 2013, an eight-person jury found Lendsey guilty of Count 2, resisting arrest. As to Count 1, aggravated assault, the jury could not reach a unanimous verdict and the court declared a mistrial. As part of a plea agreement with the State, Lendsey admitted to a prior felony conviction from 1995. Lendsey voluntarily pled guilty to Count 1 and was sentenced to the minimum sentence of 6 months imprisonment for Count 2. Lendsey received a probation tail for Count 1. He was credited 58 days of presentence incarceration credit.

## DISCUSSION

¶10 Having considered defense counsel's brief and examined the record for reversible error, *see Leon*, 104 Ariz. at 300, 451 P.2d at 881, we find

none.  The sentence imposed falls within the range permitted by law, and the evidence presented supports the conviction.  As far as the record reveals, Lendsey was represented by counsel at all stages of the proceedings, and these proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

¶11        Pursuant to *State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156-57 (1984), counsel's obligations in this appeal have ended.  Counsel need do no more than inform Lendsey of the disposition of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review.  Lendsey has thirty days from the date of this decision in which to proceed, if he desires, with a *pro se* motion for reconsideration or petition for review.

**CONCLUSION**

¶12        The conviction and sentence are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama