NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JORGE ALBERTO DELGADO-PAREDES, *Appellant.*

No. 1 CA-CR 14-0133
FILED 8-6-2015

Appeal from the Superior Court in Maricopa County
CR2011-006385-001
The Honorable Peter C. Reinstein, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Michael J. Dew, Phoenix
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Donn Kessler joined.

**G E M M I L L**, Judge:

¶1 Jorge Alberto Delgado-Paredes appeals from his convictions and sentences for one count of conspiracy to commit kidnapping, a class 3 felony, one count of illegally conducting an enterprise, a class 3 dangerous felony, two counts of kidnapping, both class 2 dangerous felonies, one count of armed robbery, a class 2 dangerous felony, one count of aggravated assault, a class 3 dangerous felony, one count of theft of means of transportation, a class 3 felony, one count of misconduct involving weapons, a class 4 felony, and one count of aggravated first degree felony murder, a class 1 dangerous felony. Delgado-Paredes's counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), stating that he has searched the record and found no arguable question of law and requesting that this court examine the record for reversible error. Delgado-Paredes was afforded the opportunity to file a *pro se* supplemental brief but did not do so. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 "We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the convictions." *State v. Powers*, 200 Ariz. 123, 124, ¶ 2 (App. 2001). This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and 13-4033.

¶3 On May 2, 2008, J.C. traveled from Georgia to visit his friend A.R., who went by the alias "Cosco." Cosco lived in Mesa with his girlfriend and their son. J.C. and Cosco had known each other for a period of years through Cosco's brother, Evert. A little after 7:00 p.m. that Friday evening, Cosco and J.C. decided to "go out for a bit."

¶4 While looking for a place to eat, a woman named Maritza Zazueta ("Maritza") phoned Cosco asking for a ride. The two men picked up Maritza at a supermarket before stopping briefly at a restaurant. After picking her up, Maritza was on the phone constantly, though J.C. and Cosco had no idea she was planning their eventual kidnapping for ransom. Earlier that same day, Maritza's boyfriend, Rogelio Palacios-Hernandez ("Rogelio"), complained of being "short of money." Maritza suggested Cosco, whom she maintained contact with after a prior relationship, as a possible racketeering victim. Rogelio then devised the rest of the kidnapping scheme with two accomplices, a man with the alias of Chollo and the defendant, Jorge Delgado-Paredes, who went by Raton. After meeting with Chollo and Delgado-Paredes, Rogelio instructed Maritza to call Cosco and meet up with him that night.

¶5    While in Cosco and J.C.'s presence, Maritza disguised her phone calls with Rogelio, thereby allowing her to receive further instructions on how to proceed with the kidnapping. Upon discovering J.C. was with Cosco, Maritza asked Rogelio whether to go forward with the plan, to which Rogelio directed her to continue. Maritza was further directed to bring Cosco and J.C. over to an apartment complex near McDowell and 59th Avenue, under the guise of picking up a friend of Maritza's. Once outside the decoy apartment, Cosco, J.C., and Maritza all exited the vehicle. Immediately afterwards, Rogelio and Delgado-Paredes drove up behind the other vehicle, got out, and approached Cosco and J.C. Both Rogelio and Delgado-Paredes were armed with handguns, as were three other accomplices who approached Cosco's car. The five armed kidnappers beat and threatened Cosco and J.C. with their guns, eventually forcing the two victims into separate cars. Maritza drove Cosco's car with two accomplices restraining J.C. in the backseat; Delgado-Paredes drove the other car while Rogelio and another accomplice detained Cosco.

¶6    The two cars drove to a house near 16th Street and Southern known at trial as "the house on 11th Place." J.C. and Cosco were dragged upstairs, where they were bound and blindfolded before being placed in a closet. The kidnappers took J.C.'s watch, chain, and wallet. Delgado-Paredes, Rogelio and Chollo then brought all Cosco's and J.C.'s possessions downstairs to divvy up among themselves. Rogelio and Delgado-Paredes returned to the upstairs room and continued to beat both victims with handguns; eventually, Delgado-Paredes began taunting Cosco specifically. With Cosco laying prone in the closet, Delgado-Paredes sat on top of him, unloaded the handgun he was carrying, and placed the muzzle against Cosco's head. Despite Delgado-Paredes's intentions in unloading the weapon, the gun fired, and a single remaining bullet killed Cosco instantly.

¶7    One of the co-conspirators attempted to clean the area immediately surrounding the shooting while Delgado-Paredes and another conspirator placed Cosco's body "in some black bags." Around 2:00 or 3:00 a.m., Delgado-Paredes and two others placed the body in another closet downstairs. At 4:00 a.m., Cosco's girlfriend, M.M., received a call from an unknown number; a female voice on the other end was looking for Cosco. M.M. hung up the phone and immediately called J.C.'s phone, as Cosco had indicated he could be reached at that number. The same female voice answered and said J.C. was not available and had left his phone with her, a response that unnerved M.M. M.M. borrowed her roommate's car to look for Cosco. While driving, M.M. received several more calls from J.C.'s phone, and the unknown male voice ultimately told M.M. "if [she] wanted

3

to see [her] loved one, [she] needed to loosen some cash"; this was Spanish slang for demanding ransom.

¶8        M.M. eventually got in touch with Evert, Cosco's brother, who had also been receiving phone calls demanding ransom. M.M. continued to speak with Evert through the weekend, though she had no further contact with Cosco's kidnappers. On Monday, May 5, Evert informed M.M. that the abductors told him "[t]hat if he didn't come up with money, they had threatened that either [Cosco] or his friend [J.C.] would show up in the news." M.M. began following the news, which reported a burning body had been found in a dumpster in an alley. Delgado-Paredes had taken Cosco's body to the alleyway dumpster and "poured gasoline on the body and lit it on fire." Upon viewing the news story, M.M. contacted the Mesa Police Department to file a missing person's report and relay the phone numbers from which the kidnappers had called. Detective B. spoke with M.M. and, after an autopsy and fingerprinting, informed her the next day that the body in the dumpster was Cosco. In turn, M.M. informed Detective B. that J.C. was still missing.

¶9        Believing J.C. was still alive, Detective B. took steps to acquire an emergency wiretap for Cosco and J.C.'s stolen phones. On Thursday, May 8, the information M.M. provided, in combination with the wiretap, allowed police to contact AT&T, the service provider for Cosco's phone. AT&T was able to provide GPS targeting for the phone, which narrowed down the phone's location to two to three different houses on the 5600 south block of 11th Place, the same block as the house holding J.C. An undercover officer posing as a landscaper performed "knock and talks" at each of the three houses in an attempt to look around the inside of the homes to gather information. The "house on 11th Place" had a window near the front door spray painted black, alerting officers to specifically surveil activity occurring around that house.

¶10        At 6:24 p.m., a police patrol car was instructed to conduct a traffic stop on a tan Chevy Malibu leaving the targeted residence. The driver of the vehicle was Delgado-Paredes. After consenting to a search of his cell phone, officers located a specific number given to them by police personnel operating the wiretap, confirming Delgado-Paredes was involved in the kidnapping. Delgado-Paredes was arrested and taken into police headquarters to be interviewed. Police conducted another knock and talk at the "house on 11th Place." Officers were granted access to the home, whereupon they located Cosco's stolen vehicle and J.C., still bound and blindfolded in the closet upstairs.

4

¶11          Delgado-Paredes was present throughout trial.  On the first day of trial, Delgado-Paredes moved to change counsel due to an alleged conflict of interest.  The motion was denied because defense counsel had performed competently at every point during the pre-trial phase.  Before the attorneys' closing statements, the parties stipulated that Delgado-Paredes was illegally in the United States during the time of the alleged offenses.  The twelve-member jury convicted Delgado-Paredes of Count 1, conspiracy to commit kidnapping, Count 2, illegally conducting an enterprise, Counts 4 and 5, kidnapping Cosco and J.C., Count 6, armed robbery against J.C., Count 7, aggravated assault against J.C., Count 8, theft of means of transportation, Count 9, misconduct involving weapons,  and Count 10, first degree felony murder.

¶12          The jury also found Count 2, Counts 4-7, and Count 10 to be dangerous offenses because of the use of a gun in the commission of those offenses.  Moreover, the jury found two additional aggravating factors for Count 10; the felony murder was committed with the expectation of receipt of pecuniary value and in an especially cruel manner.  Delgado-Paredes was sentenced to aggravated, concurrent terms of five year's imprisonment for Counts 1 and 2, as well as a probation surcharge of $20 for Count 1.  Additionally, he was sentenced to an aggravated term of eighteen years imprisonment for Count 4 to run consecutive to Counts 1 and 2, an aggravated term of eighteen years imprisonment for Count 5 to run consecutive to Count 4, an aggravated term of eighteen years imprisonment for Count 6 to run concurrently with all counts, an aggravated term of ten years imprisonment for Count 7 to run concurrently with all counts, an aggravated term of five years imprisonment for Count 8 to run concurrently with all counts, and an aggravated term of three years imprisonment for Count 9 to run concurrently with all counts.  As to Count 10, Delgado-Paredes was sentenced to an aggravated term of life imprisonment with the possibility of release after twenty-five years that would be served consecutively to all counts.  A term of community supervision was imposed for all counts, and Delgado-Paredes was credited with 2115 days of presentence incarceration for all counts except Count 10.

## DISCUSSION

¶13          Having considered defense counsel's brief and examined the record for reversible error, *see Leon*, 104 Ariz. at 300, we find none.  The evidence presented supports the convictions and the sentences imposed fall within the range permitted by law.  As far as the record reveals, Delgado-Paredes was represented by counsel at all stages of the proceedings, and

these proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

¶14      Pursuant to *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984), counsel's obligations in this appeal have ended. Counsel need do no more than inform Delgado-Paredes of the disposition of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. Delgado-Paredes has thirty days from the date of this decision in which to proceed, if he desires, with a *pro se* motion for reconsideration or petition for review.

## CONCLUSION

¶15      The convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: RT