NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

DONALD DUANE GRAFF, JR., *Appellant.*

No. 1 CA-CR 17-0653
FILED 7-31-2018

---

Appeal from the Superior Court in Maricopa County
No. CR2016-115047-001 DT
The Honorable Justin Beresky, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Kent E. Cattani joined.

**W I N T H R O P**, Judge:

¶1　　　　Counsel for Donald Duane Graff, Jr. ("Appellant") has filed a brief in accordance with *Smith v. Robbins*, 528 U.S. 259 (2000); *Anders v. California*, 386 U.S. 738 (1967); and *State v. Leon*, 104 Ariz. 297 (1969), advising this court that he has found no arguable question of law that is not frivolous and asking us to search the record for fundamental error. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999) (stating that this court reviews the entire record for reversible error). A jury convicted Appellant of assault, unlawful imprisonment, aggravated assault, and disorderly conduct. Although this court granted counsel's motion to allow Appellant to file a supplemental brief *in propria persona*, he has not done so. After reviewing the entire record, we affirm Appellant's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY[1]

¶2　　　　A grand jury charged Appellant by indictment with assault, a class one misdemeanor and domestic violence offense (Count I); unlawful imprisonment, a class 6 felony and domestic violence offense (Count II); aggravated assault, a class 4 felony and domestic violence offense (Count III); and disorderly conduct, a class 1 misdemeanor (Count IV).

¶3　　　　At trial, the State presented the following evidence: on March 10, 2016, Mesa police officers Lavin and Marriott responded to a 911 disturbance call and arrived at an apartment in Mesa, Arizona. Officer Lavin could hear yelling from inside the apartment as the officers approached. The officers knocked and announced themselves as police officers. After several minutes, Appellant opened the door, "became confrontational, asked what [the officers] were doing there, [and] said that [they] shouldn't be there." The officers explained that they were responding to a 911 call from a neighbor regarding a disturbance. Appellant told the officers "everything was fine and that nothing was

---

[1]　　　We review the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

wrong." Officer Lavin explained that, given the nature of the call, the officers needed to know who was in the apartment and make sure everyone was safe. Appellant stated that his girlfriend ("the victim"), was in the apartment and was "okay." Officer Lavin asked if he could speak to the victim, but Appellant would not let her approach the door. Officer Lavin again explained that the officers needed to make sure everyone inside the apartment was safe. Appellant walked to the back of the hallway and yelled at the victim to tell the officers that she was okay. A female voice said, "I'm okay." Officer Lavin asked the victim once again to come outside and talk to the officers. Appellant blocked the door and at least twice told the victim she could not leave. At this point, Officer Lavin told Appellant that, based on the nature of the call and the officers' inability to ensure the victim was safe, he was required to enter the apartment. Appellant then let the victim leave the apartment. As she did so, she looked scared, spoke softly, and was shaking.

¶4 The officers took the victim to an advocacy center for a forensic examination. The forensic nurse who examined the victim testified at trial that the victim reported being slapped, punched, and choked. According to the nurse's medical report, the victim disclosed having a headache, difficulty breathing, nausea, throat pain, and a change in vision. The nurse also testified that the forensic examination revealed numerous injuries: a laceration and abrasion between the nose and the upper lip; a bruise under the eye and abrasion to the nose; abrasions, petechiae, and bruising on the victim's neck; red spotting on the higher area of the neck; and multiple abrasions on the left posterior shoulder. The nurse explained that all the victim's injuries and symptoms were consistent with strangulation.

¶5 At trial, the victim testified that she had dated Appellant for six months, but as of March 10, 2016, they were no longer involved. Sometime after midnight, she went over to Appellant's mother's apartment because Appellant told her he had heroin. When she arrived, however, he did not have the heroin. The victim then tried to leave, but Appellant began yelling, smacked her, and forced her into the apartment. The victim did not leave because she was scared and because she did not want to wake Appellant's mother, who was asleep. Appellant gave the victim two Klonopin, which made her fall asleep.

¶6 Later that afternoon, Appellant's mother awakened the victim and asked the victim to help her get dressed for a date. After Appellant's mother left, an argument arose between Appellant and the victim because Appellant wanted the victim to stay and have sex with him. When she

refused, Appellant hit her, pulled her hair, hit her with the back of his hand, and choked her. Appellant also told her, "I'm going to kill you."

**¶7** The jury found Appellant guilty as charged on all counts. Before sentencing, the court conducted a trial on Appellant's alleged prior convictions. The court found that the State had proven Appellant's four alleged prior felony convictions, requiring that Appellant be sentenced as a category 3 offender.

**¶8** At sentencing, the court considered the evidence presented at trial, Appellant's cancer diagnosis, a presentence report, letters, and a statement from Appellant's mother, as well as aggravating factors. The court sentenced Appellant as a non-dangerous, repetitive offender as follows: Count I: 6 months' imprisonment with credit for 180 days of presentence incarceration; Count II: 3.75 years' imprisonment with credit for 310 days of presentence incarceration; Count III: 8 years' imprisonment with credit for 310 days of presentence incarceration; and Count IV: 6 months' imprisonment with credit for 180 days of presentence incarceration. The court ordered the sentences to run concurrently.

## ANALYSIS

**¶9** We have read and considered counsel's brief and fully reviewed the entire record for reversible error, *see Leon*, 104 Ariz. at 300; *Clark*, 196 Ariz. at 537, ¶ 30, and find none. The proceedings were conducted in compliance with Appellant's constitutional and statutory rights and the Arizona Rules of Criminal Procedure. Counsel represented Appellant at all stages of the proceedings, Appellant was afforded the opportunity to speak at sentencing, and the sentences imposed were within the statutory guidelines.

**¶10** After filing of this decision, defense counsel shall inform Appellant of the status of the appeal and of his future options. Counsel has no further obligations related to this appeal unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Appellant shall have thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

## CONCLUSION

¶11     Appellant's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA