NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

VANESSA ESMERALDA LOPEZ-PENA, *Appellant.*

No. 1 CA-CR 19-0070
FILED 2-20-2020

Appeal from the Superior Court in Maricopa County
No. CR2016-002531-001
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Brown & Little PLC, Chandler
By Matthew O. Brown
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which
Presiding Judge Maria Elena Cruz and Judge Kent E. Cattani joined.

---

**S W A N N**, Chief Judge:

**¶1**        This is an appeal under *Anders v. California*, 386 U.S. 738
(1967), and *State v. Leon*, 104 Ariz. 297 (1969), from Vanessa Esmeralda
Lopez-Pena's convictions and probation terms.   Lopez-Pena's counsel
identifies no issues for review, and Lopez-Pena has submitted no *pro per*
supplemental brief.[1]  We have reviewed the record for fundamental error.
*See Smith v. Robbins*, 528 U.S. 259 (2000); *Anders*, 386 U.S. 738; *State v. Clark*,
196 Ariz. 530, 537, ¶ 30 (App. 1999).  We find none.

**¶2**        A grand jury indicted Lopez-Pena for theft of a means of
transportation and second-degree trafficking in stolen property.   Before
trial, Lopez-Pena moved to suppress her statements to law enforcement.
She argued that she was not advised of her rights consistent with *Miranda
v. Arizona*, 384 U.S. 436 (1966), and that her statements were involuntary.
At an evidentiary hearing, the state presented evidence that during the
relevant encounter,[2] two detectives spoke to Lopez-Pena in her garage,
covertly making an audio recording of the interaction,  while other officers
executed a search warrant at her home.  Lopez-Pena was advised of her
rights under *Miranda* at the outset, though the recording equipment was
not turned on at that time.   She sat on a folding chair during the
conversation, which lasted forty-five minutes at most, and during that time
an adult supervised her minor children inside the home.  She indicated that

---

[1]     The postal service returned as undelivered this court's mailing to
Lopez-Pena of the order authorizing a *pro per* brief.   But Lopez-Pena's
counsel had earlier mailed her a letter explaining his *Anders* brief, notifying
her that this court likely would issue an order permitting her to file a *pro per*
brief, and promising to advise her of the deadline set forth in that expected
order.   Counsel did not report to us any issues concerning delivery of his
letter or any later correspondence.

[2]     Lopez-Pena moved to suppress statements made during two distinct
encounters with law enforcement.   At trial, however, the state presented no
evidence regarding the second encounter.

she understood her rights and was willing to talk, and she never asked for a break. The court found the state's evidence credible and therefore denied the motion to suppress.

¶3 At trial by jury, the state presented evidence of the following facts. In late 2012, Hertz Corporation reported as stolen a 2012 GMC Yukon XL that a male customer rented in New York and never returned. Approximately one year later, law enforcement saw an online advertisement offering the Yukon for sale in Arizona. Investigation revealed that the advertisement presented a counterfeit Vehicle Identification Number ("VIN") and a license plate associated with a fraudulent title history.

¶4 Posing as a potential buyer, law enforcement responded to the advertisement and spoke to Lopez-Pena, who set up a meeting between the "buyer" and her nephew. At that meeting, law enforcement inspected the Yukon and confirmed, via its confidential VIN, that it was the vehicle taken from Hertz and that the public VIN displayed on its door and dashboard was counterfeit.

¶5 Based on information provided by Lopez-Pena's nephew, law enforcement executed a search warrant at Lopez-Pena's residence. During a simultaneous interview, Lopez-Pena told detectives the following story. She had agreed with an acquaintance to sell an unspecified vehicle in exchange for a commission. When she complied with the acquaintance's directions to pick up the vehicle at an appointed place and time, a group of men she did not know exited the Yukon and one of them handed her the key and title before walking away with his companions. Lopez-Pena and her nephew later tried to sell the Yukon to an automobile dealer, but the dealer's representative refused the deal because the vehicle's lack of documented history and the fact that it was titled in a third party's name made him nervous that the vehicle might be stolen property. Lopez-Pena admitted that she too suspected that the vehicle was stolen, but she claimed that her uncle had checked the VIN and told her that it was fine. After the dealer refused to buy the Yukon, Lopez-Pena paid for it to be titled in her nephew's name. She then posted the online advertisement offering its sale.

¶6 The court denied Lopez-Pena's motion for judgments of acquittal. The jury found Lopez-Pena guilty as charged, and the court imposed concurrent three-year supervised probation terms.

¶7 We detect no fundamental error. Lopez-Pena was present and represented at all critical stages. The evidence supported the court's

denial of Lopez-Pena's motion to suppress. The jury was properly comprised under A.R.S. § 21-102 and was properly instructed.

¶8 A person commits theft of means of transportation "if, without lawful authority, [she] knowingly . . . [c]ontrols another person's means of transportation knowing or having reason to know that the property is stolen." A.R.S. § 13-1814(A)(5). A person commits second-degree trafficking in stolen property if she "recklessly traffics in the property of another that has been stolen." A.R.S. § 13-2307(A). To "traffic" means, among other things, to "receive, possess or obtain control of stolen property, with the intent to sell, transfer, distribute, dispense or otherwise dispose of the property to another person." A.R.S. § 13-2301(B)(3). Here, the state's evidence established that Lopez-Pena took possession of the Yukon for the purpose of selling it and that she had reason to know that the Yukon was stolen. The jury's verdicts therefore were supported by sufficient evidence. The court imposed lawful probation terms for the convictions. *See* A.R.S. §§ 13-901(A), -902(A), -1814(D), -2307(C).

¶9 We affirm. Defense counsel's obligations pertaining to this appeal have come to an end. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Unless, upon review, counsel discovers an issue appropriate for petition for review to the Arizona Supreme Court, counsel must only inform Lopez-Pena of the status of this appeal and her future options. *Id.* Lopez-Pena has 30 days from the date of this decision to file a petition for review *in propria persona*. *See* Rule 31.21(b)(2)(A). Upon the court's own motion, Lopez-Pena has 30 days from the date of this decision in which to file a motion for reconsideration. *See* Rule 31.20(c).



AMY M. WOOD • Clerk of the Court
FILED: AA