NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RYAN LEE EPPINGER, *Appellant.*

No. 1 CA-CR 24-0385

FILED 11-14-2025

Appeal from the Superior Court in Yavapai County
No. S1300CR202380286
The Honorable Thomas K. Kelly, Judge *Pro Tempore*

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

The Zickerman Law Office PLLC, Flagstaff
By Adam Zickerman
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**        Ryan Lee Eppinger appeals his convictions and sentences for two counts each of sexual assault and attempted sexual assault, one count each of kidnapping, and second-degree burglary. Eppinger's counsel filed a brief per *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after a diligent search of the record, he found no arguable, nonfrivolous question of law. Eppinger was allowed to file a supplemental brief but did not do so. Counsel asks this court to search for arguable issues. *See Penson v. Ohio*, 488 U.S. 75 (1988); *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). After reviewing the record, we affirm Eppinger's convictions and sentences but strike the "domestic violence offense" designation from the two convictions for attempted sexual assault.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Eppinger and the victim, Bonnie (a pseudonym), had a sporadic relationship for about a year and a half until Bonnie cut off all communication with Eppinger in late May 2023. Eppinger came to Bonnie's apartment twice after the breakup, once refusing to leave and once staying until Bonnie got in a car and drove away.

**¶3**        In the early morning hours of June 2, 2023, Eppinger entered Bonnie's apartment through an unlocked back door. Bonnie woke to find Eppinger shaking her leg. Bonnie told Eppinger to leave, but he refused to leave her bedroom for several hours. When Bonnie tried to use her phone to call for help, Eppinger took her phone and kept it the entire time he was there. Eppinger physically blocked Bonnie from leaving the bedroom, wrestling her back into the room when she tried to push her way out. He covered Bonnie's mouth when she tried to scream for help. After several hours, Eppinger told Bonnie to show him her butt and that he would leave if she did. She first refused, but then showed it to Eppinger to get him to leave.

¶4 Eppinger then forcefully put his hand down her pants and inserted his fingers into Bonnie's vagina. Eppinger then told her to "suck his penis or jack him off," which Bonnie refused to do. Eppinger told Bonnie that if she "got him off," he would leave. Bonnie refused and tried to fight Eppinger off, but later "gave up." Eppinger ejaculated onto Bonnie's back and left her apartment. Boonie took a picture of Eppinger's license plate as he left and called 9-1-1 to report Eppinger for the sexual assault.

¶5 After speaking with the police, Bonnie underwent a sexual assault and strangulation examination in Glendale, where she received treatment for her injuries. Police then questioned Eppinger and arrested him later that day. A grand jury indicted Eppinger on two counts of sexual assault, one count of kidnapping, two counts of attempted sexual assault (all listed as domestic violence offenses), and one count of second-degree burglary (listed as an offense committed with sexual motivation). Eppinger declined the State's plea offer to plead guilty to one count of sexual assault and one count of attempted sexual assault after being advised of the sentences for each count.

¶6 The State filed a motion *in limine* to preclude evidence that Bonnie was a heavy drinker and marijuana user and once drove drunk, prior acts where Bonnie "put[] hands" on Eppinger, potential cheating by Bonnie during their relationship, and Bonnie's prior abortion. The superior court declined to make pretrial evidentiary rulings on those matters, and Eppinger did not offer such evidence at trial. It later allowed evidence that Eppinger came to Bonnie's apartment multiple times in the week before the incident, questioning about whether Bonnie was impaired at the time of the incident, and evidence that Eppinger and Bonnie were in a previous sexual relationship before the incident.

¶7 A jury found Eppinger guilty of each count and that the sexual assault, kidnapping, and attempted sexual assault offenses were domestic violence offenses. The jury also found aggravating factors for each conviction. The superior court sentenced Eppinger to two consecutive seven-year flat-time imprisonment terms for the sexual assault convictions, with 385 days' presentence incarceration credit, concurrent five years' imprisonment for kidnapping, three and a half years' imprisonment for second-degree burglary with sexual motivation, and consecutive lifetime probation for the attempted sexual assault convictions with a sexual offender registry term.

**DISCUSSION**

**¶8**        We have read and considered counsel's brief and have reviewed the record for arguable issues. *See Leon*, 104 Ariz. at 300. Having reviewed the record, we vacate the jury's domestic violence designation but otherwise affirm Eppinger's convictions and sentences, despite one additional arguable issue. We note that Eppinger was present and represented by counsel at all stages of the proceedings against him. The record shows that the superior court afforded Eppinger all his constitutional and statutory rights and conducted the proceedings in accordance with the Arizona Rules of Criminal Procedure. The court held appropriate pretrial hearings, and the evidence presented at trial, summarized above, was sufficient to support the jury's verdicts. Eppinger's sentences fall within the range prescribed by law, with proper credit given for presentence incarceration. *See* A.R.S. §§ 13-1406, 13-1401, 13-3601, 13-1415, 13-610, 13-701, 13-702, 13-801, 13-1304, 13-1301, 13-1507, 13-3821, 13-118, 13-1001, 13-902.

**A.        Attempt Crimes Cannot be Characterized as Domestic Violence Offenses.**

**¶9**        The indictment listed attempted sexual assault as a domestic violence offense, and the court instructed the jurors to find whether the attempted sexual assaults were domestic violence offenses. The final jury instructions defined a "domestic violence offense" as "any Sexual Assault, Attempted Sexual Assault, or Kidnapping offense wherein [Bonnie] and the defendant were previously in a romantic or sexual relationship." (Emphasis omitted.) But the domestic violence designation does not extend to attempt crimes. A.R.S. § 13-3601; *see also State v. Bryars*, 2025 WL 212079, at *2, ¶ 6 (Ariz. App. Jan. 16, 2025) (mem. decision) (A.R.S. § 13-1601 does not apply to attempted sexual assault because "while the preparatory offense of attempt is defined and prohibited by statute, it is not included in the definition of domestic violence."). Thus, it was error to categorize attempted sexual assault as a domestic violence offense.

**¶10**        As Eppinger did not object at trial, we review for fundamental error—error going to the foundation of the case, taking away an essential right to the appellant's defense, or inhibiting the appellant from receiving a fair trial. *State v. Henderson*, 210 Ariz. 561, 567, 568, ¶¶ 19, 24 (2005). "Imposition of an illegal sentence constitutes fundamental error that may be reversed on appeal, despite the lack of an objection in the trial court." *State v. Provenzino*, 221 Ariz. 364, 369, ¶ 18 (App. 2009); *State v. Thues*, 203 Ariz. 339, 340, ¶ 4 (App. 2002).

¶11 The jury's domestic violence finding for the attempted sexual assault counts did not affect the consequences imposed for these convictions. Lifetime probation and sex offender registry are allowable consequences under the statutes governing attempted sexual assault sentencing. *See* A.R.S. §§ 13-1406, 13-1001, 13-902(A), 13-902(E), 13-702, 13-3821. Thus, we affirm the convictions and sentences but vacate the domestic violence designation.

**B.    The State Misstated the Evidence in Rebuttal.**

¶12 After the State's rebuttal arguments, Eppinger moved for a mistrial, claiming the State referred to facts not in evidence. Eppinger objected to the State's assertion that police interviewed the "victim's mother, friend [and] cousin" and that Eppinger could have introduced their testimony. The State responded that the assertion was only made to rebut Eppinger's implication that the lack of trial testimony from the witnesses discredited the State's other evidence. The superior court denied Eppinger's mistrial motion and, instead, again instructed the jury that "what the lawyers say and do in their opening and closing arguments is not facts."

¶13 The superior court correctly determined that the State "may properly comment on a defendant's failure to present exculpatory evidence which would substantiate the defendant's story, as long as it does not constitute a comment on the defendant's silence." *State v. Vargas*, 251 Ariz. 157, 177, ¶ 71 (App. 2021) (quotation omitted) (cleaned up). But the State misstated the evidence when it claimed that police testified that they had interviewed Bonnie's mother.

¶14 "We review a trial court's decision to deny a motion for a mistrial based on prosecutorial misconduct for an abuse of discretion." *State v. Forde*, 233 Ariz. 543, 568, ¶ 103 (2014). Counsel has "wide latitude" in closing arguments and may argue all reasonable inferences from the evidence. *Vargas*, 251 Ariz. at 178, ¶ 76. That said, misstatements of evidence are reversible error if (1) "the prosecutor's statements constituted misconduct," and (2) "a reasonable likelihood exists that those statements could have affected the jury's verdict." *Forde*, 233 Ariz. at 568, ¶ 103. Prosecutorial misconduct requires intentional conduct that the prosecutor "knows to be improper and prejudicial," not legal error, negligence, or mistake. *State v. Lapan*, 249 Ariz. 540, 549, ¶ 25 (App. 2020)(quotation omitted). Instructions from the court carry more weight than counsel's arguments, and a jury is presumed to follow the court's instructions. *Vargas*, 251 Ariz. at 178-79, ¶¶ 76-77. Potential prejudice from the state misstating evidence in closing arguments can be overcome by jury instructions that

counsel's arguments and statements are not evidence or facts. *Forde*, 233 Ariz. at 568-69, ¶ 104; *see also Vargas*, 251 Ariz. at 165, ¶ 17.

**¶15**      First, the misstatement appears to be a mistake, not intentional misconduct. The prosecutor's response suggests he confused the evidence, as he explained that "the detective testified that he interviewed both those witnesses." Second, Eppinger was not prejudiced by the mistake because the interview had no bearing on the jury's analysis of whether Eppinger committed the crimes. And the superior court issued several instructions to the jury, stating that counsel's arguments and statements in opening and closing arguments are not evidence or fact. Any prejudice was thereby cured through repeated instructions not to consider counsel's arguments in deliberation. *See Forde*, 233 Ariz. at 568-69, ¶ 104 (Court affirmed denial of motion for mistrial based on prosecutor's misstatement of evidence during closing arguments because the defendant addressed the misstatement and the trial court instructed the jury that the lawyers' arguments were not evidence.). The court did not err by denying the mistrial motion.

## CONCLUSION

**¶16**      We affirm Eppinger's convictions and sentences but vacate the domestic violence designation for the two attempted sexual assault convictions.

**¶17**      Upon the filing of this decision, defense counsel shall inform Eppinger of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:       JR